TROY LAW, PLLC
John Troy (JT 0481)
Aaron Schweitzer (AS 6369)
41-25 Kissena Boulevard Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiffs, proposed FLSA Collective and
potential Rule 23 Class*

**Case No. 20-cv-11026**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT COURT OF NEW YORK**
------------------------------------------------------------------x
ALFREDO BELLO HERRERA, and
ANGELO BELLO SILVA,
*on their own behalf and on behalf of others similarly
situated*

Plaintiffs,

v.

MANNA 2ND AVENUE LLC
        d/b/a Gina La Fornarina;
MANNA MADISON AVENUE LLC
        d/b/a Gina La Fornarina;
MANNA PARC 61 LLC
        d/b/a Gina Mexicana;
MAMEXICANA LLC
        d/b/a Gina Mexicana;
MANNA LEXINGTON AVENUE LLC
        d/b/a Gina La Fornarina;
WEST D&P LLC
        d/b/a Gina La Fornarina; and
MAMERICANA 92 LLC
        d/b/a Gina Americana;
MANNA AMSTERDAM AVENUE LLC
        d/b/a Gina La Fornarina;
ENTERPRISE RESTAURANT LLC
        d/b/a Amaranth;
PAOLA PEDRIGNANI,
IGOR SEGOTA, and
JEAN FRANCOIS MARCHAND,

Defendants.

------------------------------------------------------------------x

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**FED. R. CIV. P. 23 CLASS**
**ACTION**

<u>**COMPLAINT**</u>

**DEMAND FOR JURY TRIAL**

        Plaintiffs ALFREDO BELLO HERRERA, and ANGELO BELLO SILVA (hereinafter

referred to as Plaintiffs), on behalf of themselves and others similarly situated, by and through

their attorney, Troy Law, PLLC, hereby bring this complaint against Defendants MANNA 2ND

AVENUE LLC d/b/a Gina La Fornarina; MANNA MADISON AVENUE LLC d/b/a Gina La

Fornarina; MANNA PARC 61 LLC d/b/a Gina Mexicana; MAMEXICANA LLC d/b/a Gina

Mexicana; MANNA LEXINGTON AVENUE LLC d/b/a Gina La Fornarina; WEST D&P LLC

d/b/a Gina La Fornarina; MAMERICANA 92 LLC d/b/a Gina Americana; and MANNA

AMSTERDAM AVENUE LLC d/b/a Gina La Fornarina (hereinafter "Gina Corporate

Defendants") ENTERPRISE RESTAURANT LLC d/b/a Amaranth (hereinafter "Amaranth

Corporate Defendant"); and PAOLA PEDRIGNANI, IGOR SEGOTA, and JEAN FRANCOIS

MARCHAND and allege as follows:

## **INTRODUCTION**

1.      This action is brought by the Plaintiffs ALFREDO BELLO HERRERA, and

ANGELO BELLO SILVA, on behalf of themselves as well as other employees similarly

situated, against the Defendants for alleged violations of the Fair Labor Standards Act,

(FLSA) 29 U.S.C. § 201 *et seq.* and New York Labor Law (NYLL), arising from Defendants'

various willful, malicious, and unlawful employment policies, patterns and practices.

2.      Upon information and belief, Defendants have willfully, maliciously, and

intentionally committed widespread violations of the FLSA and NYLL by engaging in pattern

and practice of failing to pay its employees, including Plaintiffs, minimum wage for each hour

worked and overtime compensation for all hours worked over forty (40) each workweek.

3.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from

the Defendants: (1) unpaid overtime wages, (2) liquidated damages, (3) prejudgment and

post-judgement interest; and or (4) attorney's fees and cost.

4.     Plaintiffs further allege pursuant to NYLL § 650 et seq. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation (for Plaintiff ANGELO BELLO SILVA) and unpaid overtime compensation, (2) unpaid spread-of-hours premium (for Plaintiff ALFREDO BELLO HERRARA only), (3) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (6) 9% simple prejudgment interest provided by NYLL, (7) post-judgment interest, and (8) attorney's fees and costs.

5.     Plaintiffs ALFREDO BELLO HERRERA, and ANGELO BELLO SILVA are father and son.

6.     Plaintiff ALFREDO BELLO HERRERA was compelled to testify in a deposition concerning the Gina Restaurant's kitchen workers, which occurred on October 4, 2019 in *Clay Calle Jara v. Manna 2nd Ave LLC* et al. 18-cv-02871-JMF (hereinafter "Related Case").

7.     During this deposition on October 4, 2019, as a Defendants' witness, Plaintiff

ALFREDO BELLO HERRERA gave testimony unfavorable to the Defendants and favorable to the Plaintiffs concerning Related Case Plaintiffs' non-exempt status as cooks (and not executive chefs).

8.     They additionally bright their retaliation claims under 29 U.S.C. § 215(a)(3) and NYLL § 215 for Defendants'

    a.   termination of ALFREDO BELLO HERRERA on a false pretense,

    b.   cutting ANGELO BELLO SILVA's workdays from three (3) days to one (1) or two (2) days within one (1) month of Plaintiff ALFREDO BELLO HERRERA's testimony, and

    c.   denying Plaintiff ALFREDO BELLO HERRERA and Plaintiff ALFREDO BELLO HERRERA only of the promised vacation pay for the year of 2019 for all kitchen workers during the same month of Plaintiff ALFREDO BELLO HERRERA's testimony.

## JURISDICTION AND VENUE

9.     This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

10.     Venue is proper in the Southern District Court of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

11.     From on or about April 01, 2009 to November 18, 2019, Plaintiff ALFREDO BELLO HERRERA was employed by Defendants to work as a Purchaser at the following

Gina locations:

    a.  1575 2nd Avenue, New York, NY 10028;

    b.  44 East 92nd Street, New York, NY 10128;

    c.  145 East 61st Street, New York, NY 10065;

    d.  26 E 91st St, New York, NY 10028;

    e.  1288 Maidison Ave New York, NY 10128;

    f.  1016 Lexington Ave New York, NY 10021;

    g.  2028 Broadway New York, NY 10023;

    h.  27 E 92nd Street New York, NY 10128; and

    i.  279 Amsterdam Avenue, New York, NY 10023.

12.    In addition, Plaintiff ALFREDO BELLO HERRERA worked at Amaranth at 21 East 62nd Street, New York, NY 10023.

13.    From on or about April 2015 to November 2019, Plaintiff ANGELO BELLO SILVA was employed by Defendants to work as a Waiter and Deliveryman at 145 East 61st Street, New York, NY 10065;

## DEFENDANTS

### Corporate Defendants

14.    Defendant MANNA 2ND AVENUE LLC d/b/a Gina La Fornarina is a domestic business corporation organized under the laws of the State of New York with a principal address at 1575 2nd Avenue, New York, NY 10028.

15.    Defendant MANNA MADISON AVENUE LLC d/b/a Gina La Fornarina is a domestic business corporation organized under the laws of the State of New York with a principal address at 44 East 92nd Street, New York, NY 10128; and 26 E 91st St, New York,

NY 10028.

16.     Defendant MANNA PARC 61 LLC d/b/a Gina Mexicana is a domestic

business corporation organized under the laws of the State of New York with a principal

address at 145 East 61st Street, New York, NY 10065.

17.     Defendant MAMEXICANA LLC d/b/a Gina Mexicana is a domestic business

corporation organized under the laws of the State of New York with a principal address at

1288 Madison Ave New York, NY 10128.

18.     Defendant MANNA LEXINGTON AVENUE LLC d/b/a Gina La Fornarina is

a domestic business corporation organized under the laws of the State of New York with a

principal address at 1016 Lexington Ave New York, NY 10021.

19.     Defendant WEST D&P LLC d/b/a Gina La Fornarina is a domestic business

corporation organized under the laws of the State of New York with a principal address at

2028 Broadway New York, NY 10023.

20.     Defendant MAMERICANA 92 LLC d/b/a Gina Americana is a domestic

business corporation organized under the laws of the State of New York with a principal

address at 27 E 92nd Street New York, NY 10128.

21.     Defendant MANNA AMSTERDAM AVENUE LLC d/b/a Gina La Fornarina

is a domestic business corporation organized under the laws of the State of New York with a

principal address at 279 Amsterdam Avenue, New York 10023.

22.     Defendant ENTERPRISE RESTAURANT LLC d/b/a Amaranth is a domestic

business corporation organized under the laws of the State of New York with a principal

address at 21 East 62nd Street, New York, NY 10023.

*Owner/Operator Defendants*

23.     The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendant and being among the ten largest shareholders and/or LLC members, are individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

24.     PAOLA PEDRIGNANI known as Owner to Plaintiff and Owner and Officer of each of the Corporate Defendants, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at Corporate Defendants, including ENTERPRISE RESTAURANT LLC d/b/a Amaranth.

25.     At Gina, PAOLA PEDRIGNANI and IGOR SEGOTA both decided who was working and who was not.

26.     PAOLA PEDRIGNANI and IGOR SEGOTA both interviewed candidates for the job for Gina.

27.     PAOLA PEDRIGNANI did exercise her power to hire Gina employees, including ESTEBAN SALAZAR and ARNULFO.

28.     PAOLA PEDRIGNANI hired Plaintiff ALFREDO BELLO HERRERA.

29.     IGOR SEGOTA hired Plaintiff ANGELO BELLO SILVA and VICTOR GUTIERREZ, among other Gina employees.

30.     PAOLA PEDRIGNANI and IGOR SEGOTA jointly hired VICTOR FUENTES, ANTONIO ROJAS, and SAID, among other Gina employees.

31.     PAOLA PEDRIGNANI and IGOR SEGOTA both have the authority to fire

Gina employees.

32.    Both PAOLA PEDRIGNANI and IGOR SEGOTA fired CLAY JARA, and MARIA DE JESUS SILVA, among other employees.

33.    PAOLA PEDRIGNANI and IGOR SEGOTA both set work schedules.

34.    PAOLA PEDRIGNANI acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with all Corporate Defendants.

35.    IGOR SEGOTA known as Manager to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at CORP DEFENDANTS.

36.    IGOR SEGOTA signs the work schedules.

37.    IGOR SEGOTA was in charge of the wines and liquors.

38.    IGOR SEGOTA was in charge of what specials might be used/ made.

39.    Gina employees would request IGOR SEGOTA for sick leave.

40.    Sometimes Gina employees would also request sick leave from PAOLA PEDRIGNANI.

41.    IGOR SEGOTA acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Gina Corporate Defendants.

42.    JEAN FRANCOIS MARCHAND, the Liquor Licenseholder and Co-owner of

the Amaranth Restaurant, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at ENTERPRISE RESTAURANT LLC d/b/a Amaranth.

43.    JEAN FRANCOIS MARCHAND acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Amaranth Corporate Defendant.

## STATEMENT OF FACTS

### Gina Corporate Defendants Constitute an Enterprise

44.    Upon information and belief, Corporate Defendants MANNA 2ND AVENUE LLC d/b/a Gina La Fornarina; MANNA MADISON AVENUE LLC d/b/a Gina La Fornarina; MANNA PARC 61 LLC d/b/a Gina Mexicana; MAMEXICANA LLC d/b/a Gina Mexicana; MANNA LEXINGTON AVENUE LLC d/b/a Gina La Fornarina; WEST D&P LLC d/b/a Gina La Fornarina; MAMERICANA 92 LLC d/b/a Gina Americana; and MANNA AMSTERDAM AVENUE LLC d/b/a Gina La Fornarina (hereinafter "Gina Corporate Defendants") are joint employers of Plaintiffs and constitute an enterprise as the term is defined by 29 USC §203(r) insofar as:

    a.  Corporate Defendants share staff, including Plaintiff ALFREDO BELLO HERRERA;

    b.  General Manager IGOR SEGOTA would work at each of the stores;

    c.  When an employee is off because he or she is sick, IGOR SEGOTA would drive a substitute employee to that Gina store;

d.    Sometimes the Gina employees also shared the deliverymen;

e.    Corporate Defendants pay Plaintiff ALFREDO BELLO HERRERA for the work performed at the enterprise no matter what location they worked;

f.    Corporate Defendants advertise the Corporate Defendants as an enterprise; and

g.    Corporate Defendants are otherwise engaged in related activities performed through unified operation and/or common control for a common business purpose, and

h.    Corporate Defendants, that do business as Gina, Gina La Fornarina, Gina Mexicana or Gina Americana, is commonly owned and managed by Owner/ Operator Defendants PAOLA PEDRIGNANI, and IGOR SEGOTA.

45.    At all times relevant herein, Corporate Defendants were, and continue to be, an "enterprise engaged in commerce" within the meaning of FLSA.

46.    At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Corporate Defendants.

47.    As a joint enterprise Corporate Defendants are engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

48.    Each of Corporate Defendants purchased and handled goods moved in interstate commerce.

### Amaranth Defendant and Gina Corporate Defendants Constitute Joint Employers

49.    ENTERPRISE RESTAURANT LLC d/b/a Amaranth is co-owned by PAOLA PEDRIGNANI and is a joint employer of Plaintiff ALFREDO BELLO HERRERA for whom Plaintiff ordered materials.

50.    Specifically, Plaintiff ALFREDO BELLO HERRERA had to bring pasta avocados, and French fries from Gina Americana at 27 E 92nd Street New York, NY 10128to

Amaranth; and wines (like Whisper Angel and vodka) from Amaranth to Gina 26 E 91st St, New York, NY 10028; and 1016 Lexington Ave New York, NY 10021.

51.     ENTERPRISE RESTAURANT LLC d/b/a Amaranth is engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

52.     ENTERPRISE RESTAURANT LLC d/b/a Amaranth purchased and handled goods moved in interstate commerce.

## **Wage and Hour Claims**

53.     There are at least 200 employees at the Gina restaurants at any one time.

54.     Defendants committed the following alleged acts knowingly, intentionally willfully, and maliciously against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

55.     Pursuant to NYCRR Part 146-2.2 and 29 USC § 203(m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of the tip credit.

56.     At all relevant times, Defendants knowingly, willfully, and maliciously failed to pay Plaintiffs and similarly situated employees at least the New York minimum wage for each hour worked.

57.     At all relevant times, Defendants knowingly, willfully, and maliciously failed to pay Plaintiffs their lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

58.     While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

59.     Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

60.     Upon information and belief, Defendants failed to keep full and accurate

records in order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

61.    At all relevant times, Defendants knowingly, willfully, and maliciously failed to provide Plaintiffs and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

62.    Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiffs worked over ten (10) hours would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

63.    Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

### *Plaintiff ALFREDO BELLA HERRERA*

64.    From on or about April 01, 2009 to November 18, 2019, Plaintiff ALFREDO BELLO HERRERA was employed by Defendants to work as a Purchaser at the following Gina locations:

    a.    1575 2nd Avenue, New York, NY 10028;

    b.    44 East 92nd Street, New York, NY 10128;

    c.    145 East 61st Street, New York, NY 10065;

    d.    26 E 91st St, New York, NY 10028;

    e.    1288 Maidison Ave New York, NY 10128;

      f.   1016 Lexington Ave New York, NY 10021;

      g.   2028 Broadway New York, NY 10023;

      h.   27 E 92nd Street New York, NY 10128; and

      i.   279 Amsterdam Avenue, New York 10023.

65.      As part of Plaintiff ALFREDO BELLO HERRERA's position, Plaintiff would help purchase food that is needed at the Gina restaurants by going to each of the Gina stores and asking what needs to be ordered from the dishwasher, the pizzamakers, the cooks, and bartenders (for whom he would only order non-alcoholic soda).

66.      From time to time, Plaintiff ALFREDO BELLO HERRERA, alongside CLAY JARA and other Gina employees would need to help out to construction/ renovation/ demolition of Gina restaurants.

67.      These locations include:

      a.   145 East 61st Street, New York, NY 10065;

      b.   1288 Madison Ave New York, NY 10128;

      c.   27 E 92nd Street New York, NY 10128; and

      d.   2028 Broadway New York, NY 10023.

68.      Plaintiff ALFREDO BELLO HERRERA was also responsible to help send clothes of Gina employees for cleaning.

69.      Plaintiff ALFREDO BELLO HERRERA does not have the power to hire or fire employees. Only Defendants do.

70.      Plaintiff ALFREDO BELLO HERRERA never distributed the checks.

71.      Plaintiff ALFREDO BELLO HERRERA did not create the schedules.

72.      Plaintiff ALFREDO BELLO HERRERA was not a manager in fact or in name.

73.     From the beginning of Plaintiff's employment in or around April 2009 to November 18, 2019, Plaintiff ALFREDO BELLO HERRERA's regular work schedule ran from 05:00 to 22:00 for twelve and three quarters (12.75) hours per day Mondays through Saturday for six (6) days a week, with Sunday off.

74.     However, in addition to working six (6) days a week, every three (3) weeks Plaintiff would also work a five (5) hour shift on Sundays.

75.     Plaintiff was not paid extra for working that extra five hour shift.

76.     Accordingly, Plaintiff worked an average of seventy eight (78) hours a week.

77.      At all relevant times, Plaintiff ALFREDO BELLO HERRERA did not have a fixed time for lunch or for dinner because the work was very busy.

78.     During the relevant time period within the statute of limitations, from in or around 2014, Plaintiff ALFREDO BELLO HERRERA was paid a flat compensation at a rate of one thousand three hundred dollars ($1300.00) per week.

79.     In or around 2015 to November 18, 2019 , Plaintiff ALFREDO BELLO HERRERA was paid a flat compensation at a rate of one thousand five hundred dollars ($1500.00) per week.

80.     At all relevant times, Plaintiff ALFREDO BELLO HERRERA was not paid overtime pay for overtime work.

81.     Throughout his employment, Plaintiff ALFREDO BELLO HERRERA was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Spanish, Plaintiff's native language.

82.    Throughout his employment, Plaintiff ALFREDO BELLO HERRERA was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

83.    Throughout his employment, Plaintiff ALFREDO BELLO HERRERA was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

### Plaintiff ANGELO BELLO SILVA

84.    From on or about April 2015 to November 2019, Plaintiff ANGELO BELLO SILVA was employed by Defendants to work as a Waiter and Deliveryman at 145 East 61st Street, New York, NY 10065;

85.    Plaintiff was initially hired to be a deliveryman.

86.    However, later on Plaintiff primarily worked as a waiter, and would do deliveries as needed.

87.    From April 2015 to August 2018, Plaintiff ANGELO BELLO SILVA's regular work schedule ran from:

   a.    16:00 to 22:00 for six (6) hours per day for six days a week, for thirty-six (36) hours each week.

88.    From in or around September 2018 to in or around April, 2019, Plaintiff ANGELO BELLO SILVA's regular work schedule ran for three (3) days a week:

   a.    16:00 to 22:00 for a "single shift" of six (6) hours on Friday plus

   b.    two (2) single shifts from 16:00 to 22:00 or double shifts from 10:00 to 22:00 for between an additional twelve (12) to twenty four (24) hours a week.

89.    As a result, in or around September 2018 to April 2019, Plaintiff worked

between eighteen (18) and thirty (30) hours a week.

90.     From in or around May 2019 to in or around August 2019, Plaintiff ANGELO BELLO SILVA's regular work schedule ran from:

   a.   16:00 to 22:00 for six (6) hours per day for five (5) days per week from Wednesdays to Sundays with Monday and Tuesday off, for 30 hours each week.

91.     In September 2019, Plaintiff ANGELO BELLO SILVA's regular work schedule ran for three (3) days a week:

   a.   16:00 to 22:00 for a "single shift" of six (6) hours on Friday plus

   b.   two (2) single shifts from 16:00 to 22:00 or double shifts from 10:00 to 12:00 for between an additional twelve (12) to twenty four (24) hours a week.

92.     As a result, in September 2019, Plaintiff worked between eighteen (18) and thirty (30) hours a week.

93.     However, beginning October 2019, Plaintiff had his hours substantially cut as a result of his father's deposition testimony.

94.     Specifically, in October 2019, Plaintiff had his three (3) days taken away, and Plaintiff was only given one (1) or two (2) days to work.

95.     When he confronted the manager DENNIS, Plaintiff was told business was getting slow.

96.     However, Plaintiff's work was given to the other waiters, who added more hours to their schedule.

97.     All the waiters other than Plaintiff already worked full time, for six (6) days a week.

98.     As a result of cutting Plaintiff's hours, the other waiters (7-8 full time waiters at Plaintiff's store) would come in the morning or afternoon in addition, meaning that they would work double shifts instead of single shifts.

99.     At all relevant times, Plaintiff ANGELO BELLO SILVA initially had an hour break.

100.    This was later cut down to thirty (30) minutes.

101.    From on or about April 01, 2015 to December 31, 2019, Plaintiff ANGELO BELLO SILVA was paid a flat compensation at a rate of eight dollars ($7.50) per hour.

102.    From on or about April 01, 2015 to December 31, 2019 , Plaintiff ANGELO BELLO SILVA was paid a flat compensation at a rate of nine dollars ($9.00) per hour.

103.    From on or about April 01, 2015 to December 31, 2019, Plaintiff ANGELO BELLO SILVA was paid a flat compensation at a rate of nine dollars ($9.15) per hour.

104.    From on or about April 01, 2015 to December 31, 2019, Plaintiff ANGELO BELLO SILVA was paid a flat compensation at a rate of eleven dollars ($10.50) per hour.

105.    At all relevant times, Plaintiff ANGELO BELLO SILVA was not paid overtime pay for overtime work.

106.    At all relevant times, Plaintiff ANGELO BELLO SILVA was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

107.    Further, at all relevant times, Plaintiff ANGELO BELLO SILVA had to help out of the floor with the deliveries, prepare the sauces, containers, and the utensils for the delivery bags as needed by the restaurant.

108.    At all relevant times, Plaintiff ANGELO BELLO SILVA's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

109.    Throughout his employment, Plaintiff ANGELO BELLO SILVA was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Spanish, Plaintiff's native language.

110.    Throughout his employment, Plaintiff ANGELO BELLO SILVA was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

## Retaliation Claims

111.    The deposition in question occurred on October 4, 2019 in *Clay Calle Jara v. Manna 2nd Ave LLC* et al. 18-cv-02871-JMF (hereinafter "Related Case").

112.    In July and August 2019, Defendant PAOLA PEDRIGNANI was vacationing in Italy.

113.    After Defendant PAOLA PEDRIGNANI returned from Italy, she told Plaintiff ALFREDO BELLO HERRERA that he would need to testify.

114.    Soon after, a few days prior to the scheduled deposition, Plaintiff ALFREDO BELLO HERRERA had a series of meetings—three meetings—with Defendant PAOLA PEDRIGNANI and her attorney, Stephen Hans.

115.    Each of the three meetings occurred around 6 pm in the evening.

116.    The first two meetings occurred in the mezzanine of the Gina restaurant at 26 E 91st St, New York, NY 10028.

117.    The last meeting occurred on the first floor of the Gina restaurant at 26 E 91st St, New York, NY 10028.

## First Meeting

118.    A few days before the deposition, on a Wednesday, at 6:00 in the evening PAOLA PEDRIGNANI and her attorney STEPHEN HANS in the mezzanine of the Gina restaurant at 26 E 91st St, New York, NY 10028, Plaintiff ALFREDO BELLO HERRERA specifically told Defendant PAOLA PEDRIGNANI that he did not want to testify.

119.    PAOLA PEDRIGNANI's attorney brought a list of what Plaintiff ALFREDO BELLO HERRERA should answer in the event Paula's attorney should ask is CLAY CALLE JARA and ESTEBAN SALAZAR (Plaintiffs in related case) chefs.

120.    During this meeting, when Plaintiff ALFREDO BELLO HERRERA failed to give the model answer, which is that CLAY CALLE JARA, ESTEBAN SALAZAR, and others are executive chefs, Defendant PAOLA PEDRIGNANI called Plaintiff ALFREDO BELLO HERRERA "a traitor" and "an idiot" for calling CLAY and others cooks rather than chefs.

### Second Meeting

121.    At the Gina Restaurant at 26 E 91st St, New York, NY 10028 several days prior to the scheduled deposition, Plaintiff ALFREDO BELLO HERRERA was told by PAOLA PEDRIGNANI's attorney that the marshals would force him to go testify even if he did not want to.

122.    In addition, PAOLA PEDRIGNANI's attorney told Plaintiff ALFREDO BELLO HERRERA to say that IGOR SEGOTA only changed light bulbs, even though as the General Manager he together with PAOLA PEDRIGNANI had the sole power to interview, hire, fire, and set schedules.

123.    During this second meeting, both PAOLA PEDRIGNANI and STEPHEN HANS said that CLAY hired, fired, set the hours, create the specials for the menu.

### Meeting with the priest

124.     Soon after the second meeting, Plaintiff ALFREDO BELLO HERRERA spoke with a priest at St. Helena's Roman Catholic Church about testifying.

125.     The priest encouraged Plaintiff ALFREDO BELLO HERRERA to testify but to tell the truth only.

### Third Meeting

126.     STEPHEN HANS alone spoke with Plaintiff ALFREDO BELLO HERRERA, and asked him if he was ready for tomorrow during this third and last meeting prior to the deposition.

127.     STEPHEN HANS went over what needs to be said.

128.     STEPHEN HANS told Plaintiff ALFREDO BELLO HERRERA, "You know you need to say CLAY JARA has set the schedule, fire, hire, and ANTONIO ROJAS, and ESTEBAN SALAZAR, VICTOR GUTIERREZ, SAID are chefs, right?"

129.     STEPHEN HANS further instructed Plaintiff ALFREDO BELLO HERRERA to respond to the following "hints."

130.     First, if STEPHEN HANS kicked Plaintiff ALFREDO BELLO HERRERA once, then it means, "Don't respond."

131.     If STEPHEN HANS kicks Plaintiff two times, then say that CLAY JARA is the executive chef.

132.     Plaintiff ALFREDO BELLO HERRERA felt a lot of pressure from Defendant Paula, but after talking to the priest, he came calmly to the deposition and under oath told the truth, which is that the Plaintiff in related case are non-exempt cooks with no authority to hire/ fire/ set schedules, as Defendants are the only ones with such authority.

### Deposition

133.     During the deposition when Plaintiff ALFREDO BELLO HERRERA

"disappointed" PAOLA PEDRIGNANI by telling the truth, STEPHEN HANS asked to take a break.

134.    During that break, STEPHEN HANS told Plaintiff that "Paola is going to get mad because you didn't say what you are supposed to say."

135.    To which, Plaintiff responded: "I am just telling the truth."

136.    As soon as the deposition has ended, Plaintiff can see that STEPHEN HANS is livid, and he saw that STEPHEN HANS was immediately on the phone in the corner of the building of the office of MICHAEL FAILLACE, where the deposition took place.

137.    Thereafter, PAOLA PEDRIGNANI never forgave Plaintiff for his truthful testimony during the deposition.

138.    In September 2019, when PAOLA PEDRIGNANI returned from Italy, Plaintiff ALFREDO BELLO HERRERA picked up PAOLA PEDRIGNANI using the Gina Dodge Caravan.

139.    Plaintiff ALFREDO BELLO HERRERA told PAOLA PEDRIGNANI, "I am sorry."

140.    To which, PAOLA PEDRIGNANI answered, "I don't want to talk about it."

141.    In September 2019, all the other chefs received the one week of vacation that is promised for work each year.

142.    Only Plaintiff ALFREDO BELLO HERRERA did not receive. According to Defendant PAOLA PEDRIGNANI, there was no money left for the vacation pay disbursement for this year.

143.    However, Plaintiff ALFREDO BELLO HERRERA knew that claim was not true.

144.    PAOLA PEDRIGNANI  did not talk with Plaintiff like before.

145.    On Saturday night, PAOLA PEDRIGNANI  talked with Plaintiff concerning problems with 2028 Broadway New York, NY 10023.

146.    At PAOLA PEDRIGNANI's bequest, he went to Home Depot and buy the doors.

147.    PAOLA PEDRIGNANI  didn't like the door, so Plaintiff ALFREDO BELLO HERRERA went to buy the right door.

148.    On Sunday night, PAOLA PEDRIGNANI  asked for Plaintiff ALFREDO BELLO HERRERA to meet up with her on Monday at 9 p.m.

149.    Plaintiff ALFREDO BELLO HERRERA was told that he had to go to the storage.

150.    Plaintiff ALFREDO BELLO HERRERA was commended by PAOLA PEDRIGNANI for giving the best price for pasta, spaghetti, and Italian ham during one visit.

151.    PAOLA PEDRIGNANI  accused Plaintiff of receiving checks from the vegetable vendor.

152.    Plaintiff ALFREDO BELLO HERRERA was terminated on November 18, 2019 under the pretext of receiving kickbacks from the vegetable vendors.

## COLLECTIVE ACTION ALLEGATIONS

153.    Plaintiffs bring this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all

hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

154.    Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

155.    All said persons, including Plaintiffs, are referred to herein as the "Class."

156.    The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

### *Numerosity*

157.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

### *Commonality*

158.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.      Whether Defendant employed Plaintiffs and the Class within the meaning of

the New York law;

b.      Whether Plaintiff and Class members are not paid at least the hourly minimum wage for each hour worked;

c.      Whether Plaintiffs and Class members are entitled to and paid overtime at their promised hourly wage under the New York Labor Law;

d.      Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

e.      Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

f.      Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or timely thereafter;

g.      Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class on each payday; and

h.      At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

### *Typicality*

159.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful

acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

### Adequacy

160.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage-and-hour employment litigation cases.

### Superiority

161.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the

Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

162.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violation of New York Labor Law—Failure to Pay Minimum Wage
Brought on behalf of Plaintiff ANGELO BELLO SILVA and Rule 23 Class]**

163.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

164.    At all relevant times, Plaintiffs are employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

165.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff, and the collective action members, in full for some or all of the hours they worked.

166.    Defendants knowingly, willfully, and maliciously violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful

amount for hours worked.

167.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

### COUNT II.
### [Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of the Plaintiff ALFREDO BELLO HERRERA and the FLSA Collective]

168.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

169.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

170.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

171.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

172.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*,

including 29 U.S.C. §§ 207(a)(1) and 215(a).

173.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

174.    Defendants willfully and maliciously failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff' and FLSA Collectives' labor.

175.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT III.
### [Violation of New York Labor Law—Failure to Pay Overtime
### Brought on behalf of Plaintiff ALFREDO BELLO HERRERA and Rule 23 Class]

176.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

177.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

178.    At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one-half times the hourly rate the Plaintiffs and the class are entitled to.

179.    Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

180.     Defendants' failure to pay Plaintiffs was not in good faith.

## COUNT IV.
### [Violation of New York Labor Law—Spread of Time Pay
### Brought on behalf of Plaintiffs and Rule 23 Class]

181.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

182.     The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

183.     Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

## COUNT V.
### [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice
### Brought on behalf of Plaintiffs and Rule 23 Class]

184.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

185.     The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

186.     Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

187.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

188.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

### COUNT VI.
**[Violation of New York Labor Law—Failure to Provide Wage Statements**
**Brought on behalf of Plaintiffs and Rule 23 Class]**

189.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

190.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

191.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

192.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

### COUNT VII.
**[Violation of 29 U.S.C. § 215(a)(3)—Retaliation**
**Brought on behalf of Plaintiffs]**

193.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

194.    Defendants have willfully violated the anti-retaliation provisions of the FLSA,

which prohibit "any person" from "discharging or in any other manner discriminating against an employee because that employee has engaged in protected conduct." 29 U.S.C. § 215(a)(3).

195.    Owner/ Operator Defendant PAOLA PEDRIGNANI is a "person" within the meaning of 29 U.S.C. §. §203(e)(1) and 215(a)(3), subject to individual liability for retaliatory conduct.

196.    Plaintiffs ALFREDO BELLO HERRERA, and ANGELO BELLO SILVA are "employees" within the meaning of 29 U.S.C. § 203(a) and 215(a)(3).

197.    Plaintiffs ALFREDO BELLO HERRERA is an "employee" engaged in "protected conduct" who testified in Related Case deposition.

198.    Owner/ Operator Defendant PAOLA PEDRIGNANI has harassed and threatened employees, terminated Plaintiffs ALFREDO BELLO HERRERA, and ANGELO BELLO SILVA, and has discriminated against employees as a result of Plaintiff ALFREDO BELLO HERRERA's testimony in Related Case deposition.

## COUNT VIII.
### [Violation of NYLL § 215—Retaliation
### Brought on behalf of Plaintiffs]

199.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

200.    Defendants have willfully violated Labor Law § 215, which states, "[N]o employer or his agent …shall discharge, penalize or in any other manner discriminate against any employee because such employee has… testified or is about to testify in an investigation or proceeding under this chapter,."

201.    Owner/ Operator Defendant PAOLA PEDRIGNANI is an "employer" and "agent" within the meaning of the Labor Law.

202.    Plaintiffs ALFREDO BELLO HERRERA, and ANGELO BELLO SILVA are

"employees" within the meaning of NYLL. §. §2(5)and  215(1).

203.    Plaintiffs ALFREDO BELLO HERRERA is an "employee" engaged in "protected conduct" who testified in Related Case deposition.

204.    Owner/ Operator Defendant PAOLA PEDRIGNANI has harassed and threatened employees, terminated Plaintiffs ALFREDO BELLO HERRERA, and ANGELO BELLO SILVA, and has discriminated against employees as a result of Plaintiff ALFREDO BELLO HERRERA's testimony in Related Case deposition.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a)    Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)    Certification of this case as a collective action pursuant to FLSA;

c)    Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiffs and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)      An award of liquidated and/or punitive damages as a result of Defendants' knowing, willful, and malicious failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

h)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

i)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

j)      An award of liquidated and/or punitive damages as a result of Defendants' willful and malicious failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

k)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

l)      The cost and disbursements of this action;

m)      An award of prejudgment and post-judgment fees;

n)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

o)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Further, Plaintiffs respectfully request that this Court enter a judgment for their retaliation claims providing the following relief:

(a) enjoining Defendants from harassing, intimidating, threatening and terminating Gina employees because they have exercised their rights under the FLSA and the Labor Law;

(b) declaring that Defendants have violated anti-retaliation provisions of the FLSA, 29 U.S.C. § 206, as to Plaintiffs ALFREDO BELLO HERRERA, and ANGELO BELLO SILVA;

(c) awarding Plaintiffs ALFREDO BELLO HERRERA, and ANGELO BELLO SILVA backpay for lost wages;

(d) awarding Plaintiffs ALFREDO BELLO HERRERA, and ANGELO BELLO SILVA liquidated damages;

(e) awarding Plaintiffs ALFREDO BELLO HERRERA, and ANGELO BELLO SILVA prejudgment interest;

(f) awarding Plaintiffs ALFREDO BELLO HERRERA, and ANGELO BELLO SILVA

reasonable attorneys' fees and costs pursuant to the FLSA and Labor Law;

(g) directing Defendants to pay Plaintiffs ALFREDO BELLO HERRERA, and ANGELO BELLO SILVA compensatory damages for mental anguish, emotional distress and humiliation;

(h) directing Defendants to pay Plaintiffs ALFREDO BELLO HERRERA, and ANGELO BELLO SILVA punitive damages for their intentional disregard of and reckless indifference to Plaintiff's rights; and;

(i) providing such other and further relief as the Court deems proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiffs demand a trial by jury on all questions of facts.

Dated: Flushing, New York

December 31, 2020

TROY LAW, PLLC
*Attorneys for the Plaintiffs, proposed FLSA*
*Collective and potential Rule 23 Class*

/s/ John Troy
John Troy (JT0481)
Aaron Schweitzer (AS 6369)