UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ALFREDO BELLO HERRERA, and,
ANGELO BELLO SILVA,
*individually and on behalf of others similarly*
*situated,*

                           Plaintiffs,

                  -against-

MANNA 2ND AVENUE LLC
      d/b/a Gina La Fornarina;
MANNA MADISON AVENUE LLC
      d/b/a Gina La Fornarina;
MANNA PARC 61 LLC
      d/b/a Gina Mexicana;
MAMEXICANA LLC
      d/b/a Gina Mexicana;
MANNA LEXINGTON AVENUE LLC
      d/b/a Gina La Fornarina;
WEST D&P LLC
      d/b/a Gina La Fornarina; and
MAMERICANA 92 LLC
      d/b/a Gina La Fornarina;
MANNA AMSTERDAM AVENUE LLC
      d/b/a Gina La Fornarina;
ENTERPRISE RESTAURANT LLC
      d/b/a Amaranth;
PAOLA PEDRIGNANI,
IGOR SEGOTA, and
JEAN FRANCOIS MARCHAND,

                  Defendants.
-------------------------------------------------------------X

Index No.  20-cv-11026

**AFFIDAVIT OF**
**PAOLA PEDRIGNANI**

STATE OF NEW YORK       )
                         ) SS:
COUNTY OF NEW YORK    )

      PAOLA PEDRIGNANI, being duly sworn deposes and says:

1.      I am an individual residing in New York, New York. I am a named defendant in the instant action, and submit this affidavit in opposition to plaintiffs' motion for conditional collective certification and in support of defendants' request for leave to amend their answer and move to stay the instant action pending arbitration.

2.      I was born in Italy, and have lived in the United States since 1993. Beginning in or about 2009, I opened a series of small restaurants located in Manhattan which offered either simple Italian or Mexican dishes. By 2016, I owned and operated eight (8) such restaurants which included the following:

(a) MANNA 2ND AVENUE LLC d/b/a Gina La Fornarina;

(b) MANNA MADISON AVENUE LLC d/b/a Gina La Fornarina;

(c) MANNA PARC 61 LLC d/b/a Gina Mexicana;

(d) MAMEXICANA LLC d/b/a Gina Mexicana;

(e) MANNA LEXINGTON AVENUE LLC d/b/a Gina La Fornarina;

(f) WEST D&P LLC d/b/a Gina La Fornarina (closed in 2017);

(g) MAMERICANA 92 LLC d/b/a Gina La Fornarina; and

(h) MANNA AMSTERDAM AVENUE LLC d/b/a Gina La Fornarina (opened in 2017).

3.      I owned and was involved in the day to day activities of each of the eight restaurants, which were operated as an integrated group, including common management, purchasing, advertising, website and a limited interchange of employees. The eight restaurants were known within the company as the "Gina Group" of restaurants.

4.      Starting in late 2017, business conditions at the restaurants began to decline. Moreover, the COVID crisis further constricted our business. As such, since 2020 six of the eight restaurants have permanently closed and ceased operations. Today, the Gina Group consists of only two (2) restaurants, Gina La Fornarina Madison Avenue and Gina Mexicana 61st Street (which just reopened this June).

5.      Plaintiff Alfredo Bello Herrara ("Alfredo") was hired by the Gina Group sometime in 2009 as an hourly counterperson.

6.      In 2012 he was promoted to the Manager of Purchasing, and worked above the force to perform purchasing for the entire Gina Group and supervision of the kitchens at all eight of the restaurants. Alfredo made his own schedule, interfaced and supervised the chefs at each of the locations and exercised his own judgment and discretion in deciding what products to purchase and from which purveyors. He had full authority to negotiate prices and sign contracts on behalf of the Gina Group.

7.      Alfredo also participated in the management of the eight restaurants, particularly in connection with the operation of the kitchens at each restaurant. He was involved in evaluating the performance of our chefs and hiring new chefs when required. He also had authority to hire and fire other kitchen staff, but frequently deferred to the chefs on such matters. Alfredo was at all times since 2012 treated as an exempt managerial employee, and was paid on a salary basis at the rate of $1,500.00 per week during this period.

8.      Although Alfredo provided services for all eight of the Gina Group restaurants following his 2012 promotion to Manager, he was paid by Manna Madison Avenue LLC, which does business as Gina La Fornarina.

9.      In September 2019 I discovered by chance a check issued by one of the Gina Group's vendors made payable to Alfredo. I thereafter spoke directly to the owner of NYC Produce, a major vendor utilized by Alfredo, who admitted that his company had made direct payments or "gifts" to him in return for purchases of supplies. I thereafter confronted Alfredo and asked him whether he had been taking kickbacks from the restaurants' vendors. Alfredo ultimately admitted that he had received monies from our vendors and I terminated his employment.

10.     Plaintiff Angelo Bello Silva ("Angelo") is Alfredo's son.  Between 2015 and late 2019 Angelo was a college student and worked for Manna Parc 61 LLC (Gina Mexicana) on a part time basis as a delivery person.

11.     In or about 1992, I formed a restaurant by the name of Amaranth with a partner, Jean Francois Marchand.  Amaranth is a very high end, expensive Mediterranean restaurant located at 21 East 62nd Street in New York.

12.     At all times, Amaranth has always operated completely independently from the Gina Group.  At all times, it has had its own managers, its own suppliers, its own staff, menu, advertising progam and website.  There has never been any interchange of employees between Amaranth and any of the Gina Group restaurants.  Amaranth operates on a completely different concept to the Gina Group restaurants.  The *only* connection that has ever existed between the Gina Group restaurants and Amaranth is my ownership interest in each.

13.     Nonwithstanding plaintiffs' claims to the contrary, neither Alfredo nor Angelo, at any time, worked or performed services for Amaranth.

14.     Finally, sometime in January 2019 my labor counsel, Stephen Hans, advised me to have all employees of the Gina Group execute arbitration agreements.  I concurred that this was a good idea and counsel prepared written arbitration agreements in English and in Spanish for employees of each of the eight Gina Group locations.

15.     Thereafter, all of the employees of the Gina group, including Alfredo and Angelo, were given copies of such arbitration agreements in English and Spanish and asked to review them carefully and given the time to consider the agreement or review it with a lawyer.  Employees were given the option to execute a version in the language of their choice, English or Spanish.

16.     I enclose as Exhibits "A" and "B" hereto copies of arbitration agreements executed respectively by Alfredo and Angelo, who both chose to sign the Spanish language

4

versions of the Agreement. I have also included unsigned copies of the English versions of each for the Court's review.

17. With the shutdown of six of eight of the Gina Group's restaurants and the chaos created by the COVID crisis, I moved my own living quarters and had to relocate employee files and computers used by the Gina Group restaurants several times since late 2019. Accordingly, I was not able to locate the executed arbitration agreements until approximately one week ago when I discovered a large file containing signed copies of agreements executed by nearly every Gina Group employee who worked since 2019. When I located the signed arbitration agreements, I immediately notified my current attorney.

18. We now have access to the entire file, which includes arbitration agreements executed by all employees of the Gina Group restaurants who worked from early 2019 to the present.

PAOLA PEDRIGNANI

Sworn to before me this
17 day of December, 2021

Notary Public

TRAM D. LOPRESTO
NOTARY PUBLIC-STATE OF NEW YORK
No. 02LO6291464
Qualified in New York County
My Commission Expires 02-26-2022

5