UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ALFREDO BELLO HERRERA, and,
ANGELO BELLO SILVA,
*individually and on behalf of others similarly*          Index No.  20-cv-11026
*situated,*

                        **Plaintiffs,**          **DEFENDANTS' MEMORANDUM
OF LAW IN OPPOSITION TO
DEFENDANTS'MOTION FOR
CONDITIONAL COLLECTIVE
CERTIFICATION**

           **-against-**

MANNA 2ND AVENUE LLC
    d/b/a Gina La Fornarina;
MANNA MADISON AVENUE LLC
    d/b/a Gina La Fornarina;
MANNA PARC 61 LLC
    d/b/a Gina Mexicana;
MAMEXICANA LLC
    d/b/a Gina Mexicana;
MANNA LEXINGTON AVENUE LLC
    d/b/a Gina La Fornarina;
WEST D&P LLC
    d/b/a Gina La Fornarina; and
MAMERICANA 92 LLC
    d/b/a Gina La Fornarina;
MANNA AMSTERDAM AVENUE LLC
    d/b/a Gina La Fornarina;
ENTERPRISE RESTAURANT LLC
    d/b/a Amaranth;
PAOLA PEDRIGNANI,
IGOR SEGOTA, and
JEAN FRANCOIS MARCHAND,

                    **Defendants.**
-------------------------------------------------------------X

      Defendants respectfully submit this memorandum of law in opposition to plaintiffs' motion

seeking conditional collective certification in this *Fair Labor Standards Act* case.   This

memorandum is accompanied by the affidavits of Paola Pedrignani, Biljana Stojanovic and the

declaration of Andrew S. Hoffmann.

In sum, the instant motion is both legally and factually meritless for two reasons. First, plaintiffs have not produced an iota of evidence demonstrating that defendant Enterprise Restaurant LLC d/b/a Amaranth Restaurant has any relationship to the Gina Group (where they were actually employed) or have any commonality related to their operations, as they must in order to demonstrate joint employer status (and for purposes of including Amaranth's employees in a potential collective). Neither plaintiff worked for Amaranth which has at all times operated completely independent of the other defendant restaurants in this case. More to this point, at all relevant times, Amaranth has had its own managers, suppliers, staff, space, menu, advertising program and website. It has never shared employees with the Gina Group, nor has it shared expenses, finances, inventory or any other joint function so as to illustrate that the entities operate as a joint employer or single integrated enterprise. In fact, the *only* connection that has ever existed between them is that Ms. Pedrignani has a partial ownership in each. This is wholly insufficient to demonstrate that the entities are related to a degree which would form the basis for a collective class of their employers.

Second, as it relates to the Gina Group, the Court should not certify a collective class of their present and former employees, as they have each executed arbitration agreements which clearly and unmistakably require that they arbitrate all claims which arise from their employment, and explicitly include claims which arise from the FLSA and NYLL. It is well settled that there is a strong federal policy in favor of arbitration; the prospective collective class members agreed to arbitrate their claims; the scope of the agreement is broad enough to include the claims asserted herein (as the agreement specifically identifies claims under the FLSA and NYLL); and that Congress and the Courts in this Circuit have determined that such claims are arbitrable.

As a result, it would be in error to grant the instant motion and conditionally permit a collective when those class members are precluded from asserting their claims in this forum and are required to arbitrate their claims as their exclusive remedy. For the foregoing reasons, as more thoroughly set forth herein, plaintiffs' motion must be denied in its entirety.

**STATEMENT OF FACTS**

During the relevant time period, defendant Paola Pedrignani owned a number of inexpensive and casual Italian and Mexican restaurants located in Manhattan. These restaurants, each of which is a defendant herein, are collectively known as the "Gina Group" of restaurants and were operated in an integrated manner including common management, purchasing, advertising, website and a limited interchange of employees.

Defendant Pedrignani has, since 1992, also owned a fifty (50%) percent interest in a completely unrelated high end Mediterranean restaurant known as Amaranth. See Pedrignani Affidavit at ¶ 11. Amaranth is owned by an entity known as Enterprise Restaurant LLC.

Plaintiff Alfredo Bello Herrera ("Alfredo"), at all times relevant to this action, worked for the Gina Group as a Purchasing Manager. He was an exempt salaried employee, as he performed managerial functions including overseeing the restaurants, chefs and kitchens and exercising complete discretion to purchase supplies, negotiate contracts and select vendors. He also had the power to hire and fire kitchen staff. Id at ¶ 6 – 7; Stojanovic Affidavit at ¶ 4. At all times relevant, Alfredo was paid a weekly salary of $1,500.00 by Manna Madison Avenue LLC d/b/a Gina La Fornarina Madison Avenue, one of the restaurants in the Gina Group. See Pedrignani Affidavit at ¶ 7.

Alfredo's son, Angelo Bello Silva ("Angelo") worked as a part time delivery person from 2015 to late 2019 for Manna Parc 61 LLC d/b/a Gina Mexicana 61 Street, another member of the

3

Gina Group.  See Pedrignani Affidavit at ¶ 10; Stojanovic Affidavit at ¶ 6.  In their complaint herein, plaintiffs summarily allege that Alfredo worked at Amaranth.  See Complaint at ¶ 12.  The complaint further alleges that Amaranth "is co-owned by Paola Pedrignani and is a joint employer of plaintiff Alfredo Bello Herrera for whom plaintiff ordered materials."  Id. at ¶ 49.  The only specific allegations concerning Amaranth in the complaint is that Alfredo "had to bring pasta, avocados and french fries from Gina Americana at 27 East 92nd Street, New York, New York to Amaranth, and wines (like Whisper Angel and vodka) from Amaranth to Gina."  Id. at ¶ 50. Remarkably absent is any allegation that Amaranth employed Angelo.  Of course, it did not employ either plaintiff.

On February 17, 2021, counsel for defendants wrote to John Troy, counsel for plaintiffs, representing that neither of the plaintiffs ever worked for or had any relationship with Amaranth, and requested that he voluntarily withdraw the claims alleged against it.  Indeed, the restaurants have absolutely no overlap. They do not share employees, menus, supplies, vendors, space, expenses, finances, bank accounts or any other element of shared operations that one would ordinarily see between entities that are either joint employers or a single integrated enterprise.

Irrespective of this, on March 12, 2021, plaintiffs' counsel represented that the plaintiffs continue to insist that they worked for Amaranth restaurant and refuse to withdraw their claims. See Hoffmann Declaration at ¶¶ 2 – 4.

Plaintiffs now move for conditional collective certification not just related to Gina Group's employees, but also Amaranth's employees.  Each of the plaintiffs have submitted an affidavit in support of such motion, devoid of any meaningful facts which support their motion.

Angelo's affidavit contends that from April 2015 to November 2019 he worked as a waiter and deliveryman at Gina Mexicana, located at 145 East 61st Street in Manhattan.  Angelo's

affidavit contains no information <u>at all</u> about Amaranth.  Moreover, Angelo's affidavit references the first names of five (5) co-workers he allegedly spoke to about defendants' payroll practices. All of such individuals, according to Angelo, worked at the same Gina Mexicana restaurant that he was employed at.  <u>See</u> Angelo's affidavit at ¶¶ 32 – 51.

Alfredo's affidavit is also completely silent concerning Amaranth.  Rather, Alfredo contends that he worked as a "purchaser" at nine (9) Gina Group locations, but did *not* include Amaranth in his description of his job duties.  <u>See</u> Alfredo's affidavit at ¶ 3.

Alfredo also contends in his affidavit that he helped out with the "construction, renovation or demolition" of four (4) Gina Group restaurants, but again did not make any reference to Amaranth. Id at ¶¶ 6 and 7.

Similar to his son, Alfredo's affidavit mentions eight (8) co-workers that he contends he spoke to concerning defendants' payroll practices.  Id at ¶¶ 27 – 53.  Once again, none of the co-workers referenced by Alfredo ever claimed to have worked or performed any services for Amaranth.

Also noticeably absent from plaintiffs' motion is any mention of the arbitration agreements that both plaintiffs, and the prospective class members, entered into. Specifically, in early 2019, all of Gina Group's employees were asked to review and execute written arbitration agreements. <u>See</u> Pedrignani Affidavit at ¶ 14; Stojanovic Affidavit at ¶ 10.  Each of these employees, including Alfredo and Angelo, were provided with copies of the agreements in English and Spanish, as they were provided the option to review and execute the agreement in whichever language with which they felt most comfortable.  All of Gina Group's employees, including Alfredo and Angelo, ultimately executed either a Spanish language or English language version of the arbitration agreement.  <u>See</u> Pedrignani Affidavit at ¶ 15; Stojanovic Affidavit at ¶ 10.

Ms. Pedrignani recently located copies of the executed arbitration agreements, including versions signed by Alfredo and Angelo.  See Pedrignani Affidavit at ¶ 18.  Because of the turmoil caused by the shutdown of six (6) of the eight (8) Gina Group restaurants, compounded by the COVID crisis, Ms. Pedrignani had to relocate her own living quarters and place the Gina Group's employee files and computers in storage.  Id at ¶ 17.  The files were relocated several times since late 2019.  Id. at ¶ 17. Ms. Pedrignani recently located the executed arbitration agreements, including copies executed by the plaintiffs herein and they have since been provided to plaintiffs' counsel.  Id. at ¶ 18.

Separately, Defendants intend in the next several days to request a pre-motion conference during which the Defendants shall seek the Court's permission to move to amend their answer and to compel plaintiffs to arbitrate their claims pursuant to the arbitration agreement's clear language.

### ARGUMENT

### POINT I

### PLAINTIFFS ARE NOT ENTITLED TO CERTIFICATION OF A COLLECTIVE CLASS WHICH INCLUDES EMPLOYEES OF AMARYNTH

In their motion, plaintiffs seek conditional certification of a collective class which includes present and former non-exempt employees of each of the Gina Group restaurants as well as employees of Amaranth.  See plaintiffs' proposed order at ¶ 1.

However, other than the summary allegations set forth in the complaint, plaintiffs have provided no evidence at all demonstrating that either of them worked at Amaranth or that Amaranth could conceivably be considered a joint employer (or single enterprise) with the Gina Group restaurants.

Indeed, Defendants submit herewith affidavits from Paola Pedrignani and Biljana Stojanovic which articulate that at all times relevant, Amaranth operated completely independent

6

from the Gina Group restaurants.  They attest that neither Alfredo nor Angelo ever worked for Amaranth or provided any services to Amaranth in any manner.  They further affirm that at all times relevant, Amaranth had its own managers, suppliers, staff, space, menu, advertising program and website. There has never been any interchange of employees between Amaranth and any of the Gina Group restaurants, sharing of expenses or finances, nor does any other element of commonality exist which could lead to a determination that they are somehow joint employers (or a single enterprise). The *only* connection that has ever existed between Amaranth and the Gina Group restaurants is Ms. Pedrignani's ownership interest in each. This cannot possibly lead to a determination that the entities are sufficiently related so as to find that a collective class of their employees is appropriate. Plaintiffs obviously only seek to include Amaranth because it is another restaurant, and not because there are any circumstances which tie the entities together as a single enterprise/joint employer.

Critically, plaintiffs' moving papers in support of its motion provide no factual evidence whatsoever concerning the plaintiffs' putative relationship with Amaranth or Amaranth's involvement with the Gina Group restaurants and plaintiffs have no legitimate basis to dispute Paola Pedrignani and Biljana Stojanovic's affidavits on this issue.

Finally, as noted in the accompanying declaration of Andrew S. Hoffmann, plaintiffs' counsel has been aware since February 2021 that defendants dispute Amaranth's involvement in this lawsuit and requested that plaintiffs withdraw their claims against Amaranth.  Notwithstanding that plaintiffs fully understand defendants' contention concerning Amaranth, and the complete lack of relationship between the Gina Group and Amaranth, plaintiffs still move full steam ahead on their claims against Amaranth without any evidence to support their baseless claims against it.

It is particularly noteworthy and telling that plaintiffs' moving papers provide no evidence at all to support plaintiffs' allegations against Amaranth.

For this reason, defendants respectfully contend that the Court should deny plaintiffs' motion to include the employees of Amaranth in any conditional collective class in this lawsuit.

### POINT II

### PLAINTIFFS' REQUEST TO CERTIFY A COLLECTIVE CLASS OF THE GINA GROUP'S EMPLOYEES SHOULD BE DENIED BECAUSE EACH MEMBER HAS AGREED TO ARBITRATE THEIR CLAIMS

As set forth in the accompanying affidavits of Paola Pedrignani and Biljana Stojanovic, defendants have recently located and are in possession of written arbitration agreements executed by all of the members of the proposed conditional class who are currently or were formerly employed by the Gina Group restaurants, as well as the plaintiffs. See Pedrignani Affidavit. Defendants have in their possession copies of the arbitration agreements executed by the rest of the putative collective class and will provide same to plaintiffs' counsel and the Court if requested. The arbitration agreement unquestionably requires plaintiffs, and the putative class members, to arbitrate their FLSA and NYLL claims as their sole and exclusive remedy for FLSA and NYLL claims (among others), and thus plaintiffs' motion for conditional certification must be denied as this is not the proper forum for the class (or plaintiffs) to litigate their claims.[1]

First, generally speaking, a party who signs a written contract is conclusively presumed to know its contents, to have assented to them, and is thus bound by the contract's terms and conditions. *Bank Leumi USA v. Ehrlich*, 98 F. Supp 3d 637, 650 (SDNY 2015) quoting *MCC— Marble Ceramic Ctr. V. Ceramica Nuova D'Agostino, SPA*, 144 F.3d 1384, 1387 n.9 (11th Cir. 1998). There is no deviation in applying this well-settled principle when the contract in question

---

[1] We note that defendants intend to submit a pre-motion conference letter to the Court, in the coming days, seeking permission to move to compel plaintiffs to arbitrate their claims.

8

is an employment application or contract containing arbitration provisions. *Ragone v. Atlantic Video*, 595 F.3d 115 (2d. Cir. 2010) ("As a general matter, even to the extent that the law recognizes that employers and individual employees do not possess equal bargaining power, the FAA certainly does not preclude the enforcement of employment contracts which make employment conditional upon an employee's acceptance of mandatory arbitration." See also *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 33, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) ("[m]ere inequality in bargaining power" is not a basis for declining to enforce arbitration agreements contained in employment contracts). Therefore, there is no "unfairness" inherent in enforcing arbitration provisions in employment contracts. Id.

Further, Section 3 of the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (the "FAA"), expressly provides for the mandatory arbitration of issues referable to arbitration under a written agreement:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

To this point, there is a strong federal policy favoring arbitration. *Reynolds v. de Silva*, No. 09 CIV. 9218 (CM), 2010 WL 743510, at *2 (S.D.N.Y. Feb. 24, 2010) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). "Indeed, 'it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second Circuit has] often and emphatically applied.'" Id. (citing *Arciniaga v. Gen. Motors Corp.,* 460 F.3d 231, 234 (2d Cir.2006)).

In deciding whether to compel parties to arbitrate, the Court must consider several factors:

9

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

*Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987) (internal citations omitted); See also, *Arrigo v. Blue Fish Commodities, Inc.*, No. 09 Civ. 7518 (VM), 2010 WL 391813 at *2 (S.D.N.Y. Feb. 4, 2010) (citing *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F. 2d 840, 844 (2d Cir. 1987)), *aff'd* 408 Fed. Appx. 480 (2d Cir. 2011).

To expand on this, arbitration agreements that "clearly and unmistakably" require arbitration - - just as the agreement at issue here - - are enforceable as a matter of federal law. See *Abdullayeva v. Attending Homecare Servs. LLC, 928 F.3d 218 (2d. Cir. 2019); Hodges v. All Transit LLC*, No. CV 13-2587 LDW ARL, 2014 WL 537748, at *1 (E.D.N.Y. Feb. 7, 2014). Stated otherwise, when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); See also, *Frazier v. Morgan Stanley*, 2018 US Dist. Lexis 205362, SDNY 2018).

Finally, it must be noted that a valid, enforceable arbitration provision eliminates the Court's subject matter jurisdiction to hear the case. *Martens v. Barney, Inc.* 181 F.R.D. 243, 251 (S.D.N.Y. 1998) ("A valid, applicable compulsory arbitration provision eliminate[s] subject matter jurisdiction, barring plaintiffs' suit from any non-arbitral forum"); *Desiderio v. Nat'l Assoc. of Sec. Dealers, Inc.,* 2 F.Supp.2d 516 (S.D.N.Y.1998) (finding no subject matter jurisdiction where arbitration agreement was valid and applicable to plaintiff's claim). "[S]ubject-matter jurisdiction,

because it involves a court's power to hear a case, can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 1244 (2006).

Here, Plaintiffs, the potential class members and the Gina Restaurants clearly agreed to arbitrate their disputes which arise of out the employees' employment, and specifically those wage and hour claims brought herein.  See Pedgrignani Affidavit, Exhibits A and B.  Indeed, Paragraph 1 provides for arbitration of "all employment disputes based on legally protected rights (i.e. statutory, contractual or common-law rights) that may arise between an employee or former employee and THE EMPLOYER or its current and former officers, directors and agents…" See Pedgrignani Affidavit, Exhibits A and B at ¶ 1.  The Arbitration Agreement specifically identifies both the FLSA and NYLL and puts such claims before the arbitrator. Specifically, the Arbitration Agreement provides:

> This Policy makes arbitration the required and exclusive forum for the resolution of all employment disputes based on legally protected rights (i.e., statutory, contractual, or common-law rights) that may arise between an employee or former employee and THE EMPLOYER or its current and former officers, directors, and agents including, without limitation, claims. demands, or actions under... New York State Labor Law…the Fair Labor Standards of 1938... and all amendments thereto and any other federal, state, or local statute, regulation, or common law doctrine regarding employment discrimination, conditions of employment, termination of employment, breach of contract, or defamation.

As stated in this paragraph, arbitration of these claims is "the required and exclusive forum" for all employment disputes. See Pedgrignani Affidavit, Exhibits A and B at ¶ 1. Accordingly, not only have the parties unquestionably agreed to arbitrate claims, but the scope of the agreement also specifically includes FLSA and NYLL claims.

There can also be no credible dispute that Congress has intended for these claims to be arbitrable, and the Courts in this circuit have repeatedly held that FLSA and Labor Law wage and hour claims are arbitrable. See e.g. *Vera v. Saks & Co.*, 335 F.3d 109, 118 (2d Cir. 2003) (Labor

11

Law claims are arbitrable); *Reynolds*, supra, 2010 WL 743510, at *2 (FLSA and NYLL claims are arbitrable); *Hodges,* supra, 2014 WL 537748, at *1 (FLSA claims arbitrable); *Chen v. Kyoto Sushi, Inc.*, 2017 U.S. Dist. LEXIS 155853 (E.D.N.Y. 2017) (FLSA and NYLL claims arbitrable).

In fact, as is particularly relevant in this matter, the Court in *Chen*, supra, held that an arbitration agreement requiring arbitration of wage claims does not violate federal (or state) law because it effectively prevents employees from pursuing a collective action. Id at 8 – 9 (rejecting plaintiffs' argument that the arbitration agreement was unenforceable because it precluded them from pursuing a collection action).

Based on the foregoing, well-settled law on the issue, the plaintiffs' and the prospective class members' arbitration agreement is enforceable, explicitly encompasses FLSA and NYLL claims, such claims which have been held repeatedly to be arbitrable, and does not violate the law by precluding a plaintiff from pursuing a collective or class action. Accordingly, the prospective class members, assuming they had any intent to opt into this suit, are barred from doing so pursuant to the arbitration agreement entered into with the Gina Group. Plaintiffs' motion must accordingly be dismissed.

### CONCLUSION

Based on the foregoing, defendants respectfully urge that the Court deny plaintiffs' motion in all respects and grant such other relief this Court deems just, proper and equitable.

Dated: New York New York
December 17, 2021

Respectfully submitted,

HOFFMANN & ASSOCIATES

By: ___ /s/ Andrew S. Hoffmann_____
  Andrew S. Hoffmann
  Hoffmann & Associates
  450 Seventh Avenue, Suite 1400
  New York, New York 10123
  Tel (212) 679-0400
  Fax (212) 679-1080
  *Andrew.Hoffmann@Hoffmannlegal.com*