UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ALFREDO BELLO HERRERA, and,
ANGELO BELLO SILVA,
*individually and on behalf of others similarly*      Index No.  20-cv-11026 (GHW)(KHP)
*situated,*

                          Plaintiffs,

      -against-

MANNA 2ND AVENUE LLC
      d/b/a Gina La Fornarina;
MANNA MADISON AVENUE LLC
      d/b/a Gina La Fornarina;
MANNA PARC 61 LLC
      d/b/a Gina Mexicana;
MAMEXICANA LLC
      d/b/a Gina Mexicana;
MANNA LEXINGTON AVENUE LLC
      d/b/a Gina La Fornarina;
WEST D&P LLC
      d/b/a Gina La Fornarina; and
MAMERICANA 92 LLC
      d/b/a Gina La Fornarina;
MANNA AMSTERDAM AVENUE LLC
      d/b/a Gina La Fornarina;
ENTERPRISE RESTAURANT LLC
      d/b/a  Amaranth;
PAOLA PEDRIGNANI,
IGOR SEGOTA, and
JEAN FRANCOIS MARCHAND,

                          Defendants.
-------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION

**BOYD RICHARDS PARKER & COLONNELLI, P.L.**
*Attorneys for the Defendants*
1500 Broadway, Suite 505
New York, New York 10036
(212) 400-0626

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ……………………...……………………………..1

**STATEMENT OF FACTS**……………...……………………..………..…..………………2

**ARGUMENT**

**POINT I**………………………………………….………………………………….........5


**PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE THEIR
CLAIMS SINCE THEY KNOWINGLY ENTERED INTO VALID
AGREEMENTS TO ARBITRATE SUCH CLAIMS AGAINST THE DEFENDANTS**

*Plaintiffs Are Required To Arbitrate Their Claims As All
Factors Delineated In The* <u>Genesco</u> *Decision Have Been Met*…………………………...5

*Plaintiffs Were Aware That They Signed An Arbitration Agreement*…..…………………7

*Even If Plaintiffs Were Unaware Of The Agreement's Contents,
A Party Is Bound By Any Document They Sign Regardless of Whether
They Were Aware of Its Contents*……………………………………………...…………...9

**POINT II**……………………………………………….………....……………………........10

**THE DEFENDANTS HAVE NOT WAIVED THEIR RIGHT TO COMPEL
ARBITRATION AT THIS STAGE OF LITIGATION**

**CONCLUSION** ……………………………………..…...………………………...…..…….13

# **TABLE OF AUTHORITIES**

**Cases**

Page(s)

*Abdullayeva v. Attending Homecare Servs. LLC*,
   928 F.3d 218 (2d. Cir. 2019) .................................................................................... 6

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500, 126 S.Ct. 1235 (2006) ..................................................................... 10

*Arneberg v. Georges Berges Galleries, LLC*,
   2018 U.S. Dist. LEXIS 47876 (S.D.N.Y. 2018) ........................................................ 9

*Arrigo v. Blue Fish Commodities, Inc., No. 09 Civ. 7518*
   (VM), 2010 WL 391813 at *2 (S.D.N.Y. 2010) ........................................................ 6

*Bank Leumi USA v. Ehrlich*,
   98 F. Supp. 3d 637 (S.D.N.Y. 2015) ........................................................................ 9

*Brown v. Cushman & Wakefield, Inc.*,
   2002 U.S. Dist. LEXIS 13787 (S.D.N.Y. 2002) ........................................................ 9

*Chen v. Kyoto Sushi, Inc.*,
   2017 U.S. Dist. LEXIS 155853 (E.D.N.Y. 2017) ...................................................... 7

*Contec Corp. v. Remote Sol., Co., Ltd.*,
   398 F.3d 205 (2d Cir. 2005) ..................................................................................... 6

*Genesco, Inc. v. T. Kakiuchi & Co.*,
   815 F.2d 840 (2d Cir. 1987) .................................................................................. 6, 7

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20, 111 S. Ct. 1647 (1991) ...................................................................... 10

*Hodges v. All Transit LLC*,
   2014 WL 537748 (E.D.N.Y. 2014) ....................................................................... 6, 7

*La. Stadium & Exposition Dist. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
   626 F.3d 156 (2d Cir. 2010) .............................................................................. 11, 12

*Leadertex, Inc. v. Morganton Dyeing & Fishing Corp.*,
   67 F.3d 20 (2d Cir. 1995) ....................................................................................... 12

*Martens v. Barney, Inc.*,
   181 F.R.D. 243 (S.D.N.Y. 1998) ............................................................................ 10

*Myskina v. Conde Nast Publ'ns, Inc.*,
   386 F. Supp. 2d 409 (S.D.N.Y. 2005) ...................................................................... 9

*Ragone v. Atlantic Video*,
   595 F.3d 115 (2d. Cir. 2010) .................................................................................. 10

*Reynolds v. de Silva*,
   2010 WL 743510 (S.D.N.Y. 2010) ............................................................................... 5, 7

*Sayigh v. Pignatelli*,
   2013 U.S. Dist. LEXIS 189798 (S.D.N.Y 2013) ................................................................ 11

*Shearson Lehman Hutton, Inc. v. Wagoner*,
   944 F.2d 114 (2d Cir. 1991) ...................................................................................... 11, 12

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
   310 F.3d 102 (2d Cir. 2002) ............................................................................................. 12

*Vera v. Saks & Co.*,
   335 F.3d 109 (2d Cir. 2003) ............................................................................................... 7

### <u>Statues and Other Authorities</u>

9 U.S.C. § 4 ................................................................................................................... 1, 3, 5

9 U.S.C. §§ 1–16 .................................................................................................................... 5

28 USCS §§ 1 ........................................................................................................................ 5

Fair Labor Standards Act ................................................................................................ *passim*

New York Labor Law ...................................................................................................... *passim*

Defendants respectfully submit this memorandum of law in support of their motion seeking to compel Plaintiffs to arbitrate their claims, pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, and to stay the proceedings in this action, based on the terms of the parties' arbitration agreement which obligates Plaintiffs to arbitrate any claims which arise out of their employment.

## PRELIMINARY STATEMENT

Prior to filing the instant motion, the Defendants filed a letter motion to this Court seeking permission to move to the compel Plaintiffs to arbitrate their claims in this action, the relief presently sought herein. In light of Plaintiffs' opposition to same and their refusal to consent to arbitration, Defendants formerly move to compel on the bases set forth herein.

Notably, Plaintiffs executed arbitration agreements in 2019 which required them to arbitrate all claims arising out of their employment with the Defendants, specifically including any Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims. Despite executing the arbitration agreements, and in an attempt to obviate the agreement's terms, Plaintiffs commenced this case wherein they allege that the Defendants have violated their rights under the FLSA and NYLL.

It is well settled that there is a strong federal policy in favor of arbitration and that Congress and the Courts in this Circuit have determined that FLSA and NYLL claims are arbitrable, when a parties' arbitration agreement explicitly provides for arbitration of those claims, as is the case here.

Plaintiffs apparently do not dispute this issue. Rather, they claim that they cannot be compelled to arbitrate because they did not know what they were signing, as the Defendants only gave them the "last page" of the agreement which does not identify the agreement in any way. This bold misrepresentation of the facts is countered by the Plaintiffs' signature on the *first* page of the agreement as well, which says (in Spanish, Plaintiffs' preferred language):

1

## ARBITRATION AGREEMENT

**The following contract creates legal obligations which may apply to you – you are strongly advised to consult an attorney with this document before you sign the last page.**

Plaintiffs knew exactly what they were signing and their claims to the contrary cannot be countenanced. Even giving Plaintiffs every benefit of the doubt, and assuming that they somehow had not read the agreement, the unwavering law on this issue provides that a party to a contract cannot escape his contractual obligations by claiming that he did not read the agreement before signing it.

Moreover, notwithstanding Plaintiffs' likely objection on the basis of waiver, there is no credible argument that the Defendants have waived their right to make this motion when considering the relevant law in this Circuit. Specifically, a party can only waive its right to arbitrate when the party being compelled to do so has been prejudiced; but no such prejudice exists where (just as here) the parties have not meaningfully commenced the discovery process. Indeed, the Courts have compelled arbitration in cases that were much older than this, and where the parties had engaged in far more discovery than the parties herein (which is practically none).

Accordingly, as discussed in greater detail below, this case must be stayed and Plaintiffs must be required to arbitrate.

## STATEMENT OF FACTS

During the relevant time period, defendant Paola Pedrignani owned a number of inexpensive and casual Italian and Mexican restaurants located in Manhattan. These restaurants, each of which is a named defendant herein, are collectively known as the "Gina Group" of restaurants (6 of the 8 restaurants are no longer operational).

Plaintiff Alfredo Bello Herrera ("Alfredo"), at all relevant times, worked for the Gina Group as a Purchasing Manager. He was an exempt salaried employee, as he performed

managerial functions including overseeing the restaurants, chefs and kitchens and exercising complete discretion to purchase supplies, negotiate contracts and select vendors. He also had the power to hire and fire kitchen staff. Ex. 1 at ¶ 6–7; Ex. 2 at ¶ 4. During the relevant period, Alfredo was paid a weekly salary of $1,500.00 by defendant Manna Madison Avenue LLC d/b/a Gina La Fornarina Madison Avenue, one of the restaurants in the Gina Group. See Ex. 1 at ¶ 7.

In early 2019, all of Gina Group's employees were asked to review and execute written arbitration agreements. Id. at ¶ 14; Ex. 2 at ¶ 10. Each of these employees, including Alfredo and Angelo, were provided with full copies of the agreements in English and Spanish, as they were given the option to review and execute the agreement in whichever language with which they felt most comfortable. Alfredo and Angelo ultimately executed the Spanish language version of the arbitration agreement in 2019. See Ex. 1 at ¶ 15; Ex. 2 at ¶ 10; Ex. 3; Ex. 4.

Pedrignani recently located copies of Plaintiffs' executed arbitration agreements. See Ex. 1 at ¶ 18; Ex. 3; Ex. 4. Because of the turmoil caused by the shutdown of 6 of the 8 Gina Group restaurants, compounded by the Covid-19 pandemic, Pedrignani had to relocate her own living quarters and was forced to not only place the Gina Group's employee files and computers into storage, but to relocate them several times. Ex. 1 at ¶ 17. In any event, Pedrignani located the executed arbitration agreements, and they were furnished to Plaintiffs' counsel. Id. at ¶ 18.

Significantly, Plaintiffs executed the first *and* last pages of the arbitration agreements, both of which contained explicit language plainly identifying it as an arbitration agreement. Of note, the first page of the arbitration agreements executed by Plaintiffs contained their signatures beneath the capitalized and bolded title of the document, **ARBITRATION AGREEMENT**.[1] See Ex. 3 at pgs. 1, 7; Ex. 4 at pgs. 1, 7.

---

[1] The first page of each executed arbitration agreement is in Spanish and entitled "ACUERDO DE ARBITRAJE," and page 7 of Exhibit 4 is the English version of the first page. See Ex. 3 at pg. 7; Ex. 4 at pg. 7.

Furthermore, the first page of the arbitration agreements (which Plaintiffs signed) also explicitly stated that:

> **The following contract creates legal obligations which may apply to you – you are strongly advised to consult an attorney with this document before you sign the last page.**

If this was not enough, paragraph 17 of the executed agreements, which is located on the last page and appears <u>directly above</u> Plaintiffs' signatures makes specific reference to the arbitrator. In particular, paragraph 17 states that: "[t]he arbitrator shall interpret and apply these procedures as they relate to the arbitrator's powers and duties. All other procedures shall be interpreted and applied by the AAA."[2] See Ex. 3 at pgs. 6, 12; Ex. 4 at pgs. 6, 12.

Plaintiffs filed suit against the Defendants on December 31, 2020, alleging various wage violations. However, the arbitration agreement explicitly requires Plaintiffs (and the other Gina Group employees) to arbitrate any claims which arise out of their employment. Specifically, the agreement provides:

> This Policy makes arbitration the required and exclusive forum for the resolution of ***all employment disputes*** based on legally protected rights…that may arise between an employee or former employee and THE EMPLOYER or its current and former officers, directors, and agents including, without limitation, claims, demands, or actions under…***New York State Labor Law***…***the Fair Labor Standards of 1938***... and all amendments thereto and any other federal, state, or local statute, regulation, or common law doctrine regarding employment discrimination, conditions of employment, termination of employment, breach of contract, or defamation.

[Exhibit 3 at ¶ 1; *emphasis supplied*].

Despite this provision, Plaintiffs attempt to pursue their claims in this venue and claim that they had no idea what they signed and thus should not be held to the arbitration agreement's terms and obligations.

---

[2] The last page of each executed arbitration agreement is in Spanish, and page 12 of Exhibit 4 is the English version of the last page. <u>See</u> Ex. 3 at pg. 12; Ex. 4 at pg. 12.

4

## ARGUMENT

### POINT I

### PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE THEIR CLAIMS SINCE THEY KNOWINGLY ENTERED INTO VALID AGREEMENTS TO ARBITRATE SUCH CLAIMS AGAINST THE DEFENDANTS

*Plaintiffs Are Required To Arbitrate Their Claims*
*As All Factors Delineated In The Genesco Decision Have Been Met*

Section 3 of the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (the "FAA"), expressly mandates arbitration of issues referable to arbitration under a written agreement:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

To this point, there is a strong federal policy favoring arbitration. Reynolds v. de Silva, 2010 WL 743510, at *2 (S.D.N.Y. 2010) (*citing* Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). "Indeed, 'it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second Circuit has] often and emphatically applied.'" Id. (*citing* Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006)). As established herein, the trial of this action should be stayed pending an arbitration of Plaintiffs' legal claims based upon their execution of the valid arbitration agreements.

Furthermore, Section 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (the "FAA"), expressly delineates the proper procedure to be followed when a party to an arbitration agreement refuses to proceed with arbitration. Specifically, 9 U.S.C. § 4 states, in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 [28 USCS §§ 1 et seq.], in a civil action or in admiralty of the subject matter of a suit

5

arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

In deciding whether to compel arbitration, the Court must consider several factors:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987) (*internal citations omitted*); See also Arrigo v. Blue Fish Commodities, Inc., No. 09 Civ. 7518 (VM), 2010 WL 391813 at *2 (S.D.N.Y. 2010) (*citing* Genesco, Inc. v. T. Kakiuchi & Co., 815 F. 2d 840, 844 (2d Cir. 1987)), *aff'd* 408 Fed. Appx. 480 (2d Cir. 2011).

To this same end, arbitration agreements that "clearly and unmistakably" require arbitration – just as the agreements at issue here – are enforceable as a matter of law. See Abdullayeva v. Attending Homecare Servs. LLC, 928 F.3d 218 (2d. Cir. 2019); Hodges v. All Transit LLC, 2014 WL 537748, at *1 (E.D.N.Y. 2014). Stated differently, when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp. v. Remote Sol., Co., Ltd., 398 F.3d 205, 208 (2d Cir. 2005).

Here, Plaintiffs clearly agreed to arbitrate the disputes arising of out their employment, and specifically those wage and hour claims alleged within this litigation. See Ex. 3 at ¶ 1; Ex. 4 at ¶ 1. Indeed, Paragraph 1 requires arbitration of "***all employment disputes***" that arise between the parties and it ***explicitly identifies both the FLSA and NYLL*** and places such claims before the arbitrator. Specifically, Paragraph 1 states, in pertinent part:

> This Policy makes arbitration the required and exclusive forum for the resolution

> of ***all employment disputes*** based on legally protected rights…that may arise between an employee or former employee and THE EMPLOYER or its current and former officers, directors, and agents including, without limitation, claims, demands, or actions under…***New York State Labor Law…the Fair Labor Standards of 1938***...

[Exhibit 3 at ¶ 1; *emphasis supplied*].

As stated in this paragraph, arbitration of these claims is "the required and exclusive forum" for all employment disputes. Ex. 3 at ¶ 1; Ex. 4 at ¶ 1. Accordingly, not only have the parties incontrovertibly agreed to arbitrate their claims arising from their employment relationship, but the scope of the agreement specifically includes FLSA and NYLL claims, thereby satisfying the first two factors articulated in Genesco, Inc., supra, 815 F.2d at 844.

As for the third factor, there can be no credible dispute that Congress intended for these claims to be arbitrable, and the Courts in this Circuit have repeatedly held that they are. See Vera v. Saks & Co., 335 F.3d 109, 118 (2d Cir. 2003) (NYLL claims are arbitrable); Reynolds, supra, 2010 WL 743510, at *2 (FLSA and NYLL claims are arbitrable); Hodges, supra, 2014 WL 537748, at *1 (FLSA claims arbitrable); Chen v. Kyoto Sushi, Inc., 2017 U.S. Dist. LEXIS 155853 (E.D.N.Y. 2017) (FLSA and NYLL claims arbitrable). In fact, as is particularly relevant here, the Court in Chen, rejected plaintiffs' argument that the arbitration agreement was unenforceable because it precluded them from pursing a collective action. Id. at 8-9.

Based on the foregoing, Plaintiffs cannot credibly dispute that the three factors have been met and that they must be compelled to arbitrate their claims.

### *Plaintiffs Were Aware That They Signed An Arbitration Agreement*

As Plaintiffs have no credible argument that the Genesco factors have not been met, Plaintiffs instead make the disingenuous argument that they were wholly unaware of what they signed. In fact, Plaintiffs misrepresented to this Court, in opposition to the Defendants' pre-motion conference letter that "***It is apparent and should be concluded that plaintiff was only***

7

*given the last page of the Arbitration Agreement* …" See ECF Doc. #70 at pg. 3; *emphasis supplied*.

This is contradicted by the Arbitration Agreement which Plaintiffs signed in *two* places: the first page and the last page. And while Plaintiffs claim that they were completely ignorant to the contents of the document they signed, the first page (executed by Plaintiffs) tells a very different story.

This first page, in conspicuous, large and bold lettering, was entitled "**ARBITRATION AGREEMENT**". Furthermore, that same page advised the signatory that the document they were about to sign created "legal obligations" that may apply to them, and the signatories were urged to seek counsel to review the document prior to executing it. See Ex. 3 at pgs. 1, 6-7, 12; Ex. 4 at pgs. 1, 6-7, 12.

Furthermore, Paragraph 17 of the arbitration agreements appears directly above Plaintiffs' signatures and contains the word "arbitration" *twice* as it lays out the powers and duties of the arbitrator in prospective employment disputes. See Ex. 3 at pgs. 6, 12; Ex. 4 at pgs. 6, 12.

It is thus disingenuous for Plaintiffs to argue that they did not know what they signed based on some nonsensical "formatting" argument. Importantly, despite the claim that the formatting on the English and Spanish versions appear different, the *contents* of Paragraph 17 on the last page remained the same between both versions.

This Court is not faced with a situation where an employee was merely handed a blank or otherwise non-descript signature page contained within a larger document. Plaintiffs cannot ignore that they signed the first page of the arbitration agreements, entitled "**ARBITRATION AGREEMENT**," and which quite obviously advised them that they were about to enter into an agreement that would create certain legal obligations, and suggested that they first speak with

8

counsel. See Ex. 3 at pgs. 1, 7; Ex. 4 at pgs. 1, 7.

Based upon the foregoing, Plaintiffs' execution of the arbitration agreements - - particularly the *first* page of the agreement - - forecloses Plaintiffs' argument that they blindly executed some unknown document and had no concept of its contents or the fact that they were binding themselves to certain legal obligations.

*Even If Plaintiffs Were Unaware Of The Agreement's Contents, A Party Is Bound By Any Document They Sign Regardless of Whether They Were Aware of Its Contents*

Even assuming *arguendo* that Plaintiffs were completely unaware of the agreement's contents when they signed (which is denied, based on the foregoing) this *still* does not absolve Plaintiffs from the legal obligations within the agreement.

Indeed, this Court has consistently held that a party is bound by a contract or similar document that he or she signs, and they cannot escape the terms of such documents based upon an excuse that he or she did not read the document before signing. See Arneberg v. Georges Berges Galleries, LLC, 2018 U.S. Dist. LEXIS 47876, at * 19 (S.D.N.Y. 2018) (holding that a plaintiff's defense that she did not read the document is insufficient to excuse her from her contractual obligations); Bank Leumi USA v. Ehrlich, 98 F. Supp. 3d 637, 650 (S.D.N.Y. 2015); Myskina v. Conde Nast Publ'ns, Inc., 386 F. Supp. 2d 409, 414 (S.D.N.Y. 2005) (holding that the failure to read a release does not excuse a plaintiff from being bound); Brown v. Cushman & Wakefield, Inc., 2002 U.S. Dist. LEXIS 13787, at * 56 (S.D.N.Y. 2002) (holding that parties are conclusively bound by the contracts they sign whether or not the party has read the contract). Consequently, Plaintiffs cannot seek to rid themselves of their contractual obligation to proceed with arbitration simply because they claim to not have read the agreement they executed.

There is no deviation in applying this well-settled principle when the contract in question is an employment application or contract containing arbitration provisions, and the employee

claims to have had no choice in executing the agreement due to unequal bargaining power. See Ragone v. Atlantic Video, 595 F.3d 115 (2d. Cir. 2010) ("As a general matter, even to the extent that the law recognizes that employers and individual employees do not possess equal bargaining power, the FAA certainly does not preclude the enforcement of employment contracts which make employment conditional upon an employee's acceptance of mandatory arbitration."); See also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33, 111 S. Ct. 1647 (1991) ("[m]ere inequality in bargaining power" is not a basis for declining to enforce arbitration agreements contained in employment contracts).

Accordingly, there is no inherent "unfairness" in enforcing arbitration provisions in employment contracts, nor could any unequal power between the parties act as a basis for declining to grant the instant motion. Id. At bottom, based on the well-settled law on this issue, Plaintiffs' arbitration agreement is binding and enforceable against them as it explicitly encompasses FLSA and NYLL claims, which have been repeatedly held to be arbitrable, Plaintiffs were well aware of what they executed and, even if they were not, this still does not constitute a legitimate legal basis to absolve them from their legal obligations within the agreements that they willingly executed.

## POINT II

### THE DEFENDANTS HAVE NOT WAIVED THEIR RIGHT TO COMPEL ARBITRATION AT THIS STAGE OF LITIGATION

A valid, enforceable arbitration provision eliminates the Court's subject matter jurisdiction to hear the case. Martens v. Barney, Inc., 181 F.R.D. 243, 251 (S.D.N.Y. 1998). "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." Arbaugh v. Y&H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 1244 (2006).

As Plaintiffs have no legitimate basis to claim that the arbitration agreements are

unenforceable, they cling to the flimsy argument that the Defendants have waived their right to arbitrate because of the time that has passed since this matter's inception. But this prospective argument is plainly inconsistent with the law. A party is only said to have waived its right to arbitrate "when it engages in protracted litigation that prejudices the opposing party." Sayigh v. Pignatelli, 2013 U.S. Dist. LEXIS 189798, at * 7 (S.D.N.Y 2013) (*citing* PGP Indus., Inc. v. Webster Auto Parts Inc., 128 F.3d 103, 107-08 (2d Cir. 1997).

Specifically, the Courts consider three factors on the issue of waiver: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." La. Stadium & Exposition Dist. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 626 F.3d 156, 159 (2d Cir. 2010) *citing* Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 229 (2d Cir. 2001).

Of the three factors, prejudice is an *indispensable* element of the analysis. Id. It is also important to note, given Plaintiffs' argument regarding waiver, that the presumption in favor of arbitration "cannot be overcome merely based upon costs inherent in litigation or the length of time delay." Sayigh, supra, 2013 U.S. Dist. LEXIS 189798, at * 11.

As a prime example, in Sayigh, this Court held that the defendants' delay of ***a year and nine months*** from the time of removal until their assertion of the right to arbitration was *insufficient* to constitute prejudice, despite conducting ***six depositions*** and engaging in ***considerable document production*** during the litigation. Id. at 10; see also Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114 (2d Cir. 1991) (holding that there was no waiver where defendants waited ***three years*** to compel arbitration).

Finally, it must be noted that "waiver of the right to arbitration is not lightly to be inferred" and that "[a]ny doubts concerning whether there has been a waiver are resolved in favor of

11

arbitration." See Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 104 (2d Cir. 2002); Leadertex, Inc. v. Morganton Dyeing & Fishing Corp., 67 F.3d 20, 25 (2d Cir. 1995)).

Here, Plaintiffs cannot cite to any actual prejudice caused by the purported delay in requesting arbitration, as the parties have not engaged in any significant litigation since this case was commenced (14 months ago), and in any event, the passage of time or litigation expenses incurred is not enough to demonstrate prejudice. See La. Stadium & Exposition Dist., supra, 626 F.3d 156; Shearson Lehman Hutton, Inc., supra, 944 F.2d 114. In fact, the parties have not exchanged *any* discovery responses to date nor have *any* depositions taken place (or even scheduled). This is a far cry from the six depositions conducted in Sayigh, before the defendants successfully moved to compel arbitration.

Rather, the vast majority of the prior proceedings in the instant matter involved motion practice regarding the dismissal of prior defendant Igor Segota, and the parties' unsuccessful mediation. Other than this, Plaintiffs have largely stalled prosecution of this action (other than to move for conditional certification of the class, which remains pending).

Although Plaintiffs' counsel has served initial discovery demands upon the Defendants, he has not yet furnished any discovery responses to the Defendants' demands nor has he engaged in any document production, let alone significant production. Therefore, it is respectfully submitted that the Defendants have not waived their right in seeking to compel arbitration since this matter is still in its infancy as it pertains to discovery, and Plaintiffs have yet to identify any actual prejudice.

## **CONCLUSION**

Based on the foregoing, the Defendants respectfully request that this Court grant the instant motion in its entirety and compel Plaintiffs to arbitrate their claims, along with such other and further relief as this Court deems just, proper and equitable.

Dated: New York New York
       February 11, 2022

                              Respectfully submitted,

                              BOYD RICHARDS PARKER & COLONNELLI P.L.

By:   /s/ Jacqueline L. Aiello
     Jacqueline L. Aiello
     Boyd Richards Parker & Colonnelli P.L.
     1500 Broadway, Suite 505
     New York, New York 10036
     Tel (212) 400-0626
     *JAiello@Boydlawgroup.com*

     HOFFMANN & ASSOCIATES

By:   /s/ Andrew S. Hoffmann
     Andrew S. Hoffmann
     Hoffmann & Associates
     450 Seventh Avenue, Suite 1400
     New York, New York 10123
     Tel (212) 679-0400
     Fax (212) 679-1080
     *Andrew.Hoffmann@Hoffmannlegal.com*