UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALFREDO BELLO HERRERA, and,
ANGELO BELLO SILVA,
*individually and on behalf of others similarly*     Index No.  20-cv-11026 (GHW)(KHP)
*situated,*

                              Plaintiffs,

        -against-

MANNA 2ND AVENUE LLC
     d/b/a Gina La Fornarina;
MANNA MADISON AVENUE LLC
     d/b/a Gina La Fornarina;
MANNA PARC 61 LLC
     d/b/a Gina Mexicana;
MAMEXICANA LLC
     d/b/a Gina Mexicana;
MANNA LEXINGTON AVENUE LLC
     d/b/a Gina La Fornarina;
WEST D&P LLC
     d/b/a Gina La Fornarina; and
MAMERICANA 92 LLC
     d/b/a Gina La Fornarina;
MANNA AMSTERDAM AVENUE LLC
     d/b/a Gina La Fornarina;
ENTERPRISE RESTAURANT LLC
     d/b/a  Amaranth;
PAOLA PEDRIGNANI,
IGOR SEGOTA, and
JEAN FRANCOIS MARCHAND,

                              Defendants.
------------------------------------------------------------X


**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION**


BOYD RICHARDS PARKER & COLONNELLI, P.L.
*Attorneys for the Defendants*
1500 Broadway, Suite 505
New York, New York 10036
(212) 400-0626

i

Defendants respectfully submit this reply memorandum of law in further support of their motion seeking to compel Plaintiffs to arbitrate their claims, pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, and to stay the proceedings in this action, based on the terms of the parties' arbitration agreement which obligates Plaintiffs to arbitrate any claims which arise out of their employment, specifically including FLSA and NYLL claims.

## PRELIMINARY STATEMENT

Even through Plaintiffs' affidavits, it is evident that Plaintiffs were aware that they had signed an agreement to arbitrate based upon the clear language stated on the first and last pages - - which reference it being an arbitration agreement in several instances - - and which they acknowledge signing.

In any event, Plaintiffs claim that they cannot be bound by the agreement because they were only provided a copy of the signature pages, but yet they do not cite to *a single case* to oppose the well settled law that you are bound by contracts that you sign, even if you did not read it prior to signing or were only provided the signature pages. The only exception to this is if the signatory was under some type of duress; but Plaintiffs do not even claim that they were, and in fact they admit that they *could not have been* under duress to execute the agreement. Importantly, Plaintiffs admit that they had the option not to sign it. In plaintiff Alfredo Bello Herrera's affidavit, he readily admits that when he and his co-worker "Apariso" were given the arbitration agreement on January 11, 2019 during their lunch break, ***Apariso*** "refused to sign the paper", but Herrera decided to sign the agreement. See Plaintiff's Exhibit 1 at ¶ 7-8.

Accordingly, Plaintiffs had the option *not* to sign the arbitration agreements when they were handed out, but did anyway and thus bound themselves to arbitrate the claims they now seek to litigate. The ability to decline to sign the agreements cuts sharply against any manufactured claim of duress (although it is important to note that Plaintiffs do not even argue

1

that they *were* under duress). At bottom, Plaintiffs, as parties and signatories to the arbitration agreements, cannot now escape their contractual obligations by claiming that they did not read the agreements before signing them, absent any argument that they were under duress to sign them.

Finally, the inconsistencies and mischaracterizations within Plaintiffs' positions cannot go unnoticed. Plaintiffs previously argued through counsel that they only received and signed the *last* page of the arbitration agreement. Specifically, in their opposition to the Defendants' pre-motion conference letter, Plaintiffs misrepresented to this Court that "***It is apparent and should be concluded that plaintiff was only given the last page of the Arbitration Agreement*** …" See ECF Doc. #70 at pg. 3 (emphasis supplied). However, Plaintiffs now have no choice but to admit that they received and signed the *first* and *last* pages which both identify the agreement as one to arbitrate. Plaintiffs conveniently left out that they signed the first page of the agreement, as it is the first page which states very distinctly, in Plaintiffs' native language: "ARBITRATION AGREEMENT".

Plaintiffs' second, yet flimsy, argument is that they would be prejudiced if this case were referred to arbitration due to "significant litigation" that has already transpired. Yet, Plaintiffs' counsel concedes that "much of the case revolved around the dismissed defendant Igor Segota and his motion to dismiss for insufficient service of process." Accordingly, by their own admission, the majority of the litigation that has taken place did not involve the substantive legal and factual issues surrounding Plaintiffs' employment claims but rather dispositive motion practice involving Plaintiffs' improper service of former defendant Igor Segota. Moreover, this motion practice would have ensued regardless of whether Plaintiffs were compelled to arbitrate now or when the case first commenced.

Following the dismissal of the claims against defendant Igor Segota, the parties were

directed to mediate. Separate from mediating, the parties have not engaged in any substantive litigation. Plaintiffs' argument that they would have to "start over" if compelled to arbitrate is nonsensical. There *is* nothing to "redo". And even if the parties had engaged in substantive litigation so far, which they have not, this alone does not bar the Court from compelling arbitration at this stage. Indeed, Plaintiffs did not cite to a single case to refute the Defendants' cited cases in which the parties had engaged in significant litigation (completing paper discovery and several depositions) and the Court still compelled arbitration.

Therefore, as discussed in greater detail below, this case must be stayed and Plaintiffs must be required to arbitrate.

## ARGUMENT

### POINT I

### PLAINTIFFS ENTERED INTO VALID AGREEMENTS TO ARBITRATE THEIR EMPLOYMENT CLAIMS AGAINST THE DEFENDANTS

***Plaintiffs Agreed to Arbitrate Their Employment Claims***

Plaintiffs' attempt to attack the validity of the arbitration agreement focuses only on the first Genesco factor which requires a demonstration that the parties agreed to arbitrate. See Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987). To this end, Plaintiffs' counsel struggles to raise an issue of fact by submitting affidavits that the Plaintiffs purportedly did not know they were signing arbitration agreements because they were not provided with the complete agreement at the time of execution (rather, just the signature pages). Even assuming *arguendo* that this was true, which it is not, this is not a valid defense. It is black letter law that a party cannot avoid their contractual obligations by claiming that they only received the signature page. Marciano v. DCH Auto Group, 14 F. Supp. 3d 322 (S.D.N.Y. 2014).

Specifically, "[u]nder New York law, a party ***is under an obligation to read a document***

3

*before he or she signs it*, and a party cannot generally avoid the effect of a document on the ground that he or she did not read it or know its contents." In fact, "a signer's duty to read and understand that which it signed *is not diminished merely because the signer was provided with only a signature page*." Marciano, supra, 14 F. Supp. 3d 322, 330 *citing* Dasz, Inc. v Meritocracy Ventures, Ltd., 108 A.D.3d 1084, 1085 (4th Dep't 2013). See also Yorke v. TSE Group LLC, 2019 U.S. Dist. LEXIS 119192 (S.D.N.Y. 2019); DeBono v. Wash. Mut. Bank, 2006 U.S. Dist. LEXIS 89283 (S.D.N.Y. 2006).

Similar to the facts at bar, this Court in DeBono held that the plaintiff was bound by the terms of the signed arbitration agreement despite never being told that he was signing an arbitration agreement and only receiving an incomplete document. Id. at 6-7. Notably, and just like here, the signature page of the arbitration agreement at issue in DeBono clearly indicated that it was an agreement to arbitrate disputes and that it was part of a longer document. Id. at 9. This Court further reasoned that even if the plaintiff had only received that last page, he would still be bound by the conditions of the entire agreement once it was executed, absent any fraud, duress or other wrongful act. Id. at 6-7.

More recently, this Court in Yorke held that the plaintiff failed to raise a genuine question of fact as to the arbitration agreement's validity, despite averring that he was never given the opportunity to review the arbitration clause (within the employee handbook) and that he "never agreed to arbitrate any and all claims he had in connection with his employment." Yorke, supra, 2019 U.S. Dist. LEXIS 119192 at * 6. This Court determined that the agreement to arbitrate within the employee handbook was binding on the plaintiff notwithstanding the fact that he never actually read the arbitration clause since he did not dispute that his signature appeared on the agreement and there was no evidence of fraud or wrongdoing on the part of his employer. Id.

Here, Plaintiffs signed the first page of the agreement, which was conspicuously entitled

4

"**ARBITRATION AGREEMENT**" and plainly alerted the signatories that the document they were about to sign created "legal obligations" that may apply to them. This page also urged the signatories to seek counsel prior to executing it. See Ex. 3 of the Defendants' motion papers at pgs. 1, 6-7, 12; Ex. 4 of the Defendants' motion papers at pgs. 1, 6-7, 12. Furthermore, Paragraph 17 of the arbitration agreements appears directly above Plaintiffs' signatures and contains the word "arbitration" *twice* as it lays out the powers and duties of the arbitrator in prospective employment disputes, which includes the specific disputes at bar. See Ex. 3 at pgs. 6, 12; Ex. 4 at pgs. 6, 12.

Tellingly, Plaintiffs' counsel failed to cite a single case in opposition to the case law cited by the Defendants which laid out the proposition that a party is bound by the terms of a document he or she signs. By conceding this point, Plaintiffs cannot demonstrate a genuine dispute as to the formation of the arbitration agreement by arguing that they did not fully read or understand the agreement they signed. See Moise supra, 2017 U.S. Dist. LEXIS 84132, at * 10; see also Arneberg v. Georges Berges Galleries, LLC, 2018 U.S. Dist. LEXIS 47876, at * 19 (S.D.N.Y. 2018) (holding that a plaintiff's defense that she did not read the document is insufficient to excuse her from her contractual obligations).

Based upon the foregoing, even if this Court accepts the statements contained within Plaintiffs' affidavits as true - - that they only received the first and last pages of the agreement - - it is respectfully submitted that this Court reach a similar result as it did in DeBono, Marciano and Yorke by holding that the agreement is binding and enforceable against Plaintiffs, absent any wrongful act on the Defendants' part (which is denied and analyzed further, *infra*).

Accordingly, it is respectfully submitted that Plaintiffs validly agreed to arbitrate their employment claims by executing the arbitration agreements.

***Plaintiffs Have Not Established the Defense of Duress***

To overcome the law which binds a signatory to a contract despite their failure to read it (or not being provided a full copy), the plaintiff must demonstrate that they were under duress or coercion when executing. But here, Plaintiffs have not only failed to argue that they were under duress, but acknowledge that they *could not have been*, as another employee who was provided the same agreement at the same time decided he did not want to sign it (and didn't).

Under New York law, the defense of duress or coercion is "reserved for extreme and extraordinary cases, where a party asserting economic duress can show (1) threats of an unlawful act by one party that (2) compel performance by the other party of an act that it had a legal right to abstain from performing." Adler v. Lehman Bros. Holdings (In re Lehman Bros. Holdings), 855 F.3d 459, 477 (2d Cir. 2017). Furthermore, a party claiming duress "must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so." VKK Corp. v. NFL, 244 F.3d 114, 122 (2d Cir. 2001). The Second Circuit has held that delays as short as six months have constituted as a waiver of the claim of duress. Id. at 123.

Here, Plaintiff's cannot establish that they were under duress when they signed the arbitration agreements or that were unlawfully forced to sign them on the spot. To the contrary, plaintiff Herrera admits that his co-worker refused to sign the arbitration agreement when they *both* were handed the agreement during their lunch break. See Plaintiff's Exhibit 1 at ¶ 7-8. Plaintiffs clearly had the option to sign or refuse to sign the arbitration agreements, and that they were not compelled to execute them under a threat of an unlawful act by the Defendants.

Therefore, Plaintiffs cannot establish the *prima facie* elements of duress to avoid the arbitration agreement's consequences. Even assuming that Plaintiffs could establish the defense of duress, which they cannot, it is respectfully submitted that such claimed defense has been waived since it was never timely raised following execution of the agreements. VKK Corp.,

supra, 244 F.3d at 122.  Plaintiffs claim of duress was raised for the first time in opposition to the instant motion, more than three years after the arbitration agreements were executed, and the record is devoid of any evidence that the Plaintiffs attempted to promptly repudiate the agreements, as is required.

Based upon the foregoing, since Plaintiffs had the option not to sign the arbitration agreements when they were received, and as they waited more than three years after executing the agreements before claiming they were voidable, Plaintiffs cannot avoid their contractual duties by relying on a claim of duress or other improper act.

## POINT II

### THE DEFENDANTS HAVE NOT WAIVED THEIR RIGHT TO COMPEL ARBITRATION AT THIS STAGE OF LITIGATION

As discussed at greater length in the Defendants original motion papers, a party is only said to have waived its right to arbitrate "when it engages in protracted litigation that prejudices the opposing party." Sayigh v. Pignatelli, 2013 U.S. Dist. LEXIS 189798, at * 7 (S.D.N.Y 2013) (*citing* PGP Indus., Inc. v. Webster Auto Parts Inc., 128 F.3d 103, 107-08 (2d Cir. 1997).

Despite Plaintiffs' counsel's attempt to characterize the instant litigation as "protracted," the record reveals that it is much closer to its infancy than Plaintiffs would have the Court believe. By Plaintiffs' own admission, a majority of the litigation up until this point involved the resolution of the motion to dismiss for insufficient service of process filed by defendant Igor Segota, who has since been dismissed from this action. And this would have occurred regardless of whether the parties were directed to arbitrate now or a year ago.

The only actual discovery that has taken place to date is the exchange of initial paper discovery demands and service of a discovery response from Plaintiffs' counsel in November 2021, a few months prior to the filing of the Defendants pre-motion conference letter. Again,

Plaintiffs would have been required to provide documentary evidence to the Defendants regardless of whether the parties were litigating this matter in Court or through arbitration.

Moreover, Plaintiffs' discovery production is readily distinguishable from the significant discovery proceedings detailed within the Defendants' cited case law. For instance, in Sayigh, this Court held that the defendants' delay of *a year and nine months* from the time of removal until their assertion of the right to arbitration was *insufficient* to constitute prejudice, despite conducting *six depositions* and engaging in *considerable document production* during the litigation. Id. at 10.

It must also be restated that the passage of time or engagement in significant discovery, by itself, does not demonstrate prejudice. Sayigh, supra, 2013 U.S. Dist. LEXIS 189798, at * 11.

Plaintiffs concede within their opposition papers that the Defendants informed this Court of their intention to compel arbitration within just one month of discovering the arbitration agreements, which were initially displaced after several of the Defendants' restaurants closed during the Covid-19 pandemic. See Ex. 1 of the Defendants' motion papers at ¶ 17-18. Accordingly, it is respectfully submitted that the Defendants did not waive their right to arbitration as this matter is still in its infancy as it pertains to discovery proceedings and the Defendants promptly sought to compel arbitration upon locating the missing arbitration agreements. It should also be noted that the parties would be directed to exchange discovery responses irrespective of whether Plaintiffs' claims were pursued in arbitration.

Based upon the foregoing, and because the waiver of the right to arbitration is not lightly to be inferred, Plaintiffs must be compelled to arbitrate their claims.

## **CONCLUSION**

Based on the foregoing, the Defendants respectfully request that this Court grant the instant motion in its entirety and compel Plaintiffs to arbitrate their claims, along with such other and further relief as this Court deems just, proper and equitable.

Dated: New York New York
        March 25, 2022

                Respectfully submitted,

                BOYD RICHARDS PARKER & COLONNELLI P.L.

By:   /s/ Jacqueline L. Aiello
     Jacqueline L. Aiello
     Boyd Richards Parker & Colonnelli P.L.
     1500 Broadway, Suite 505
     New York, New York 10036
     Tel (212) 400-0626
     *JAiello@Boydlawgroup.com*

     HOFFMANN & ASSOCIATES

By:   /s/ Andrew S. Hoffmann
     Andrew S. Hoffmann
     Hoffmann & Associates
     450 Seventh Avenue, Suite 1400
     New York, New York 10123
     Tel (212) 679-0400
     Fax (212) 679-1080
     *Andrew.Hoffmann@Hoffmannlegal.com*