```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/18/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

ALFREDO BELLO HERRERA, and,
ANGELO BELLO SILVA,
*Individually and on behalf of others similarly situated*,

                    Plaintiffs,

-against-

MANNA 2ND AVENUE LLC
    d/b/a Gina La Fornarina;
MANNA MADISON AVENUE LLC
    d/b/a Gina La Fornarina;
MANNA PARC 61 LLC
    d/b/a Gina La Fornarina;
MAMEXICANA LLC
    d/b/a Gina La Fornarina;
MANNA LEXINGTON AVENUE LLC
    d/b/a Gina La Fornarina;
WEST D&P LLC
    d/b/a Gina La Fornarina; and
MAMERICANA 92 LLC
    d/b/a Gina La Fornarina;
MANNA AMSTERDAM AVENUE LLC
    d/b/a Gina La Fornarina;
ENTERPRISE RESTAURANT LLC
    d/b/a Amaranth;
PAOLA PEDRIGNANI,
IGOR SEGOTA, and
JEAN FRANCOIS MARCHAND,

                    Defendants.

---------------------------------------------------------------- X

1:20-cv-11026-GHW

MEMORANDUM OPINION AND ORDER

GREGORY H. WOODS, United States District Judge:

      Plaintiffs Alfredo Bello Herrera and Angelo Bello Silva are former employees of the "Gina Restaurant Group," which is made up of, and owned by, the defendant companies and individuals in this case (collectively, "Defendants"). On December 31, 2020, Plaintiffs brought this action alleging various violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA") and the New York Labor Law. Nearly a year later, Defendants found arbitration agreements that had been signed

by Plaintiffs and filed this motion to compel arbitration. Because Plaintiffs entered into valid arbitration agreements, and because Defendants have not waived their right to compel Plaintiffs to arbitrate their claims, Defendants' motion to compel arbitration is granted.

## I. BACKGROUND

### A. Factual Background

In or around 2009, Defendant Paola Pedrignani opened a series of restaurants making up a group known collectively as the "Gina Group." Affidavit of Paola Pedrignani Dkt. No. 78-1 ("Pedrignani Aff.." ¶ 2.). Ms. Pedrignani hired Plaintiff Alfredo Bello Herrera as a counterperson around the same time, and in 2012 promoted him to Manager of Purchasing, a supervisory role that gave him the authority to purchase products for and manage staff across all of the Gina Group restaurants. *Id.* ¶¶ 5-7. Plaintiff Angelo Bello Silva, Mr. Herrera's son, was employed between 2015 and 2019 on a part-time basis at Manna Parc 61 LLC, one of the Gina Group restaurants, as a delivery person. *Id.* ¶ 10.

In January 2019, Ms. Pedrignani was advised by her counsel to require all Gina Group employees to sign arbitration agreements. *Id.* ¶ 14. She prepared arbitration agreements in both English and Spanish. *Id.* The first page of the English version of the agreement states:

**ARBITRATION AGREEMENT**

> The following contract creates legal obligations which may apply to you – you are strongly advised to consult an attorney with this document before you sign on the last page.

Dkt. No. 78-3 ("Herrera Agreement") 2, 8; Dkt. No. 78-4 ("Silva Agreement") 2, 8.[1]

---

[1] Collectively, the Herrera Agreement and Silva Agreement are referred to throughout as the "Agreements" or the "Arbitration Agreement(s)."

On January 11 and 12, 2019, Mr. Herrera and Mr. Silva were handed English and Spanish copies of the Arbitration Agreement.  Pedrignani Aff. ¶ 15.  Mr. Herrera was told to sign the Agreement "right then and there."  Dkt. No. 80-1 ("Herrera Aff.") ¶¶ 3, 6-7; Dkt. No. 80-2 ("Silva Aff.") ¶¶ 3, 6-7.  He asserts that he was "not given any time to thoroughly look at the paper and was not even prov[ided] the other pages that went along with the agreement."  Id. ¶ 10.  Mr. Herrera recalls that another employee—"Apariso"—was handed a copy of the Agreement at the same time he was and refused to sign it then and there.  Herrera Decl. ¶¶ 7-8.

Mr. Silva recalls that he "remembers being handed two pieces of paper" by "Jose," the head waiter of the restaurant.  Silva Decl. ¶ 6.  He asked Jose what he was signing, but Jose told him to "just . . . sign the papers."  Id. ¶ 7.  He claims that he "understand[s] Spanish but some of the words on the page that [were] provided in [S]panish were difficult for [him] to understand."  Id. ¶ 9.

Plaintiffs nevertheless signed the Arbitration Agreements.  Herrera Decl. ¶ 3; Silva Decl. ¶ 3.  The Arbitration Agreements are each dated and have Plaintiffs' signatures on the first and last pages.  Herrera Agreement at 2, 7; Silva Agreement at 2, 7.

### B. Procedural History

Plaintiffs brought this putative class action on December 31, 2020, alleging that Defendants violated the New York Labor Law and the FLSA by, among other things, failing to pay minimum wage, failing to pay overtime, and failing to provide wage statements.  Dkt. No. 1 ¶¶ 2, 163-204.  Defendants answered on April 20, 2021, and were referred to mediation ten days later.  Dkt. Nos. 20, 30.  A discovery schedule was set October 22, 2021.  Dkt. No. 48.  Then, on November 12, 2021, Plaintiffs filed a motion for conditional class certification.  Dkt. No. 52.  Defendants opposed that motion, which the Court has not taken up due to the issues raised in this motion.  Dkt. No. 61.

A mediation session was held on November 23, 2021, but the parties were unsuccessful in resolving the claims in this action. Dkt. No. 56.

On December 15, 2021, Defendants first notified Plaintiffs that Ms. Pedrignani had found the arbitration agreements in question. Dkt. No. 70 at 2. They claimed that, due to the closure of various Gina Group restaurants, the arbitration agreements had been moved to storage. Pedrignani Aff. ¶ 17. Ms. Pedrignani claims to have found them on December 10, 2021, while searching for documents to respond to Plaintiffs' discovery requests. *See id.*; *see also* Dkt. No. 70 at 2. On February 23, 2022, Defendants moved to compel arbitration and to stay this case. Dkt. No. 76 ("Mot"). On March 4, 2022, Plaintiffs filed their opposition to the motion, Dkt. No. 79 ("Opp'n"), and Defendants replied on March 25, 2022. Dkt. No. 83 ("Reply").

## II.     LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides the following:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C.A. § 4. A party has "refused to arbitrate" within the meaning of Section 4 if it "commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so." *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004) (citation and brackets omitted); *see also Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004) (finding petitioner did

not refuse to arbitrate where respondents had neither commenced litigation nor failed to comply with an order to arbitrate).

In ruling on a petition to compel arbitration under the FAA, district courts are "limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected, or refused to arbitrate." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (internal quotation marks and citation omitted). It is well settled that "arbitration is a matter of contract, and that parties cannot be compelled to arbitrate issues that they have not specifically agreed to submit to arbitration." *Id.* at 120 (internal quotation marks and citations omitted); *see also Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 567 (S.D.N.Y. 2013) ("It has long been settled that arbitration is a matter of contract and that, therefore, a party cannot be compelled to arbitrate issues that a party has not agreed to arbitrate."). If the Court determines "that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015) (quotation omitted).

"The question of whether the parties have agreed to arbitrate, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "This principle flows inexorably from the fact that arbitration is simply a matter of contract between the parties." *Id.* (quotation and brackets omitted); *see also AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (holding that "arbitration is a matter of contract") (quotation omitted). Hence, "[t]he threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *Nicosia*, 834 F.3d at 229 (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 27 (2d Cir. 2002)).

5

But "[t]he Supreme Court has repeatedly instructed that the FAA 'embodies a national policy favoring arbitration.'" *Id.* at 228–229 (quoting *AT&T Mobility LLC*, 563 U.S. at 346); *see also Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (the FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution"). And "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "Accordingly, federal policy requires us to construe arbitration clauses as broadly as possible." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995)).

In evaluating a motion to compel arbitration, courts "apply a 'standard similar to that applicable for a motion for summary judgment.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quoting *Nicosia*, 834 F.3d at 229). This means the Court considers "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, and draws all reasonable inferences in favor of the non-moving party." *Id.* (internal quotations omitted). "If undisputed facts in the record require[] the issue of arbitrability to be resolved against the Plaintiff as a matter of law," then the court must grant the motion to compel arbitration. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *see also Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 561–62 (S.D.N.Y. 2013) (courts "must grant a motion to compel arbitration" when there are no genuine issues of material fact and the moving party is clearly entitled to arbitration as a matter of law); *Khanna v. Am. Exp. Co.*, No. 11-cv-6245 (JSR), 2011 WL 6382603, at *1 (S.D.N.Y. Dec. 14, 2011) (same).

On the other hand, "if there is a disputed question of material fact, such that 'the making of the arbitration agreement . . . [is] in issue,' then 'the court shall proceed summarily to the trial thereof.'" *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 49 (2d Cir. 2022) (quoting 9 U.S.C. § 4). In

considering whether there is an issue of fact, "[t]here is nothing . . . to suggest that nonmovants' affidavits alone cannot—as a matter of law—suffice to defend against" such a motion. *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). However, "where 'the facts alleged' in a nonmovant's declaration 'are so contradictory that doubt is cast upon their plausibility,' then absent other evidence, granting the motion to compel may be appropriate." *Barrows*, 36 F.4th at 51 (quoting *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011) (per curiam)).

Courts in this Circuit engage in the following inquiry:

> [F]irst, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75–76 (2d Cir. 1998)). The party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010); *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("'[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.").

Here, Plaintiffs do not dispute that any claims under the FLSA and the New York Labor Law are required to be arbitrated if the Agreements are enforceable.[2] Instead, Plaintiffs dispute only whether they have agreed to arbitrate.

---

[2] Even if the parties had disputed the scope of the arbitration, the Arbitration Agreement plainly applies to Plaintiff's claims in this case. Paragraph 1 of the Arbitration Agreement provides:

> This Policy makes arbitration the required and exclusive forum for the resolution of all employment disputes based on legally protected rights (i.e., statutory, contractual, or common-law rights) that may arise between an employee or former employee and THE EMPLOYER or its current and former

7

### III. DISCUSSION

#### A. Plaintiffs Agreed to Arbitrate their Employment Claims

The parties to this case entered a valid agreement to arbitrate. "Arbitration is contractual by nature—'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"[3] *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). However, under New York law, "[a] party is under an obligation to read a document before he or she signs it, and a party cannot generally avoid the effect of a [document] on the ground that he or she did not read it or know its contents." *Brandywine Pavers, LLC v. Bombard,* 108 A.D.3d 1209, 970 N.Y.S.2d 653, 655 (2013) (internal quotation marks omitted) (second alteration in original); *see also In re Lehman Brothers Inc.,* 478 B.R. 570, 587 n. 19 (S.D.N.Y.2012) ("[A] party's failure to read or understand a contract that it signs does not relieve it of its obligation to be

---

officers, directors, and agents including, without limitation, claims, demands, or actions under Title VII of the Civil Rights Act of 1964, and 1991, the Age Discrimination Employment Act, all claims under *New York State Labor Law and the New York City Administration Code*, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993*, the Fair Labor Standards [Act] of 1938*, the Equal Pay act of 1963, the Employee Retirement Income Security Act of 1974, and all amendments thereto and any other federal, state, or local statute, regulation, or common law doctrine regarding employment discrimination, conditions of employment, termination of employment, breach of contract, or defamation.

Arbitration Agreement ¶ 1. Plaintiffs' claims are brought pursuant to the statutes expressly contemplated by the Arbitration Agreement, and thus fall within the Agreement's scope. Moreover, the Agreement applies to the Defendant companies all well as any of its "officer, directors, and agents." The parties do not dispute that the individual defendants in this case, Paola Pedrignani, Igor Segota, and Jean Francois Marchand, are within the scope of that agreement, and may properly move to compel arbitration.

[3] The Arbitration Agreement does not specify which state's laws govern any disputes brought under those agreements. However, it notes that the Agreement is meant govern "all claims under New York State Labor Law and the New York City Administration Code." *See* Herrera Agreement at 1, Silva Agreement at 1. Moreover, Plaintiffs were employed at Defendants' restaurants in New York, and both parties agree that New York law governs this dispute. Accordingly, the Court will apply New York law. *See Barrow*, 36 F.4th at 50 (applying the state law of the state at issue, which "the 'parties . . . agree[d], [was] that of New York'" to resolve a motion to compel arbitration).

bound by the contract."); *Superior Officers Council Health & Welfare Fund v. Empire HealthChoice Assurance, Inc.,* 85 A.D.3d 680, 927 N.Y.S.2d 324, 326 (2011) ("[P]arties are presumed to know the contents of the agreements they have signed." (citation omitted)); *Marciano v. DCH Auto Group*, 14 F.Supp.3d 322, 331 (S.D.N.Y. 2014) (same). Further, "[a] party cannot generally avoid the effect of a document . . . where the signer's failure to understand the terms of the contract stems from the signer's illiteracy or other language barriers." *Suqin Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378, 387 (S.D.N.Y. 2017) (citation omitted). Finally, "[a] signer's duty to read and understand that which it signed is not diminished merely because [the signer] was provided with only a signature page." *Dasz, Inc. v. Meritocracy Ventures, Ltd.,* 108 A.D.3d 1084, 969 N.Y.S.2d 653, 655 (2013) (citation omitted).

Here, Plaintiffs acknowledge that they signed the agreements. Herrera Aff. ¶ 3; Silva Aff. ¶ 3. And there is no dispute that the agreements clearly reference arbitration; the plain text of the agreements repeatedly references arbitration and explains that the parties are agreeing that claims should be arbitrated. *See, e.g.*, Agreements at 9 ("both parties are fully and absolutely in agreement that . . . disputes or claims should be the sole jurisdiction of arbitration[.]"). Indeed, Mr. Herrera plainly admits that he knew the Agreements concerned arbitration. Herrera Aff. ¶ 3. Accordingly, Plaintiffs agreed to arbitrate their claims.

Plaintiffs argue that the Agreements are invalid because Plaintiffs received only the first and last pages of the agreement, but that argument is unpersuasive. Even if they were only provided with the first and last pages of the Agreements, they would still be bound because they nonetheless signed them. *See Dasz,* 969 N.Y.S.2d at 655 ("[A] signer's duty to read and understand that which it signed is not diminished merely because [the signer] was provided with only a signature page"). Moreover, it is clear from even just the face of the first and last pages of the Agreements, which

make explicit reference to an arbitration and an arbitrator, that Plaintiffs were entering an agreement to arbitrate. Dkt. No. 78-3 at 2, 7. Further, the signature page of each of the agreements begins with paragraph 17, which ostensibly would have indicated that the agreement also included paragraphs 1-16. *Cf. DeBono v. Washington Mut. Bank*, No. 05 CIV.10333 DC, 2006 WL 3538938, at *3 (S.D.N.Y. Dec. 8, 2006) (finding that Plaintiff ought to know that "there should have been paragraphs 1-12 before [paragraph 13]"). Thus, the Agreements are still binding, even if Plaintiffs were only provided with the signature pages.

Plaintiffs' second argument—that they "were not even aware that they were signing an arbitration agreement"—is equally unpersuasive. Plaintiffs' failure to understand the terms of the Arbitration Agreement does not relieve them from being bound by those terms once they signed the Agreements. *See In re Lehman Brothers Inc.,* 478 B.R. at 587 n. 19 ("[A] party's failure to read or understand a contract that it signs does not relieve it of its obligation to be bound by the contract."). Moreover, Plaintiffs had at least some notice that the agreement related to arbitration, as Mr. Herrera "remember[s] signing a paper that reference[d] Arbitration." Herrera Aff. ¶ 3. To the extent Mr. Silva's difficulty with the Spanish language made it difficult to understand the nature of the Agreement, any language barrier or problem of illiteracy is insufficient to relieve Mr. Silva from being bound by the Agreement. Dkt. No. 80-2 ¶ 9; *see Suqin Zhu* 291 F. Supp. 3d at 387 ("[A] party cannot generally avoid the effect of a document . . . where the signer's failure to understand the terms of the contract stems from the signer's illiteracy or other language barriers."). Thus, Plaintiffs cannot invalidate the Agreement by their failure to understand its terms.[4]

---

[4] Plaintiffs do not expressly claim that they signed the Agreements due to duress, though they mention that they were "told to sign the agreements then and there." Regardless, any claims that they signed the agreements out of duress is not supported. Economic duress is "a doctrine 'reserved for extreme and extraordinary cases,' where the party asserting economic duress can show '(1) threats of an unlawful act by one party [that] (2) compel[ ] performance by the other party of an act [that] it had a legal right to abstain from performing.'" *In re Lehman Brothers Inc.,* 478 B.R. at 577 (citations

B.     **Defendants Have Not Waived Their Right to Compel Arbitration**

Defendants have not waived the right to compel Plaintiffs to arbitrate their claims. Prior to May 23, 2022, courts in the Second Circuit considered three factors "in determining whether a party has waived its right to arbitration by expressing its intent to litigate the dispute in question . . . (1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (citations omitted). Courts determined that "[t]he key to a waiver analysis is prejudice." *Id.* (quoting *Thyssen, Inc. v. Calypso Shipping Corp., S.A.* 310 F.3d 102, 105 (2d Cir. 2002). Those courts unequivocally determined that "'[w]aiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated.'" *Id.*

However, in *Morgan v. Sundance, Inc.*, the Supreme Court determined that courts may not "condition a waiver of the right to arbitration on a showing of prejudice." 142 S. Ct. 1708, 1713 (2022). In *Morgan*, the Court reviewed the Eighth Circuit's test for waiver, which stated that "a party waives its contractual right to arbitration if it knew of the right; 'acted inconsistently with that right'; and . . . 'prejudiced the other party by its inconsistent actions.'" *Id.* at 1712 (quoting *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115, 1117 (8th Cir. 2011). The Supreme Court rejected the Eighth Circuit's requirement that a party demonstrate prejudice, remarking that "[o]utside the arbitration context, a federal court assessing waiver does not generally ask about prejudice" and that generally, "court[s] focus[] on the actions of the person who held the right" rather than the "effects of those actions on the opposing party." *Id.* at 1713.

---

omitted). The facts of this case are hardly extreme or extraordinary; Plaintiffs do not assert that any such threats were made to support a finding of economic duress. Indeed, another employee, "Apariso," who was presented the same documents as was Herrera under the same conditions, refused to sign the Agreement. Herrera Aff. ¶ 8. That Apariso felt free to decline to sign the documents suggests that Herrera also could have declined to do so.

11

The Supreme Court reasoned the Eighth Circuit had deviated from more traditional waiver analysis by relying on a "decades-old Second Circuit decision," *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968). *Id.* In *Carcich*, the Second Circuit relied on the "overriding federal policy favoring arbitration" to conclude that the "right to arbitrate 'is not to be lightly inferred,'" such that "'mere delay' in seeking a stay of litigation, 'without some resultant prejudice' to the opposing party, 'cannot carry the day.'" *Id.* (quoting *Carcich*, 389 F.2d at 696).

In *Morgan*, the Supreme Court rejected *Carcich*'s analysis. Instead, it determined that "the FAA's 'policy favoring arbitration,' does not permit courts to invent special, arbitration-preferring procedural rules." *Id.* The Court reasoned that "court[s] must hold a party to its arbitration contract just as the court would to any other kind" and that courts "may not devise novel rules to favor arbitration over litigation." *Id.* Thus, "[i]f an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it."[5] *Id.*

Substantively, then, the Supreme Court's decision suggests that courts should toss out special rules for considering waivers of the right to arbitration, and instead use the same test for waiver as would be used in any other contractual dispute. However, in its directions to the Eighth Circuit on remand, the Supreme Court commented that the Eighth Circuit could "strip" its test "of its prejudice requirement" and ask, "[d]id Sundance, as the rest of the Eighth Circuit's test asks, knowingly relinquish the right to arbitrate by acting inconsistently with that right?" *Id.* at 1714. That

---

[5] *Morgan* grounded its reasoning in the text of the FAA, noting that "Section 6 of the FAA provides that any application under the statute—including an application to stay litigation or compel arbitration—shall be made and heard in the manner provided by law for the making and hearing of motions." *Id.* at 1714. Thus, "[a] directive to treat arbitration applications in the manner provided by law for all other motions is simply a command to apply the usual federal rules[.]" *Id.* (internal quotations omitted). And "[b]ecause the usual federal rule of waiver does not include a prejudice requirement, Section 6 instructs that prejudice is not a condition of finding that a party waived its right to stay litigation or compel arbitration under the FAA." *Id.*

language suggests that the Eighth Circuit should merely strip analysis of prejudice from its existing test for waiver of the right to arbitrate, rather than applying the Circuit's standard test for evaluating waiver in cases not involving arbitration agreements.

That instruction is not entirely consistent with *Morgan's* instruction to adopt a general waiver analysis, as the remainder of the opinion suggests. That is because the Eighth Circuit's test for general waivers of contract rights differs from its test for waivers of the right to arbitrate—even when the latter is stripped of its prejudice requirement. Specifically, for general contractual waivers, the Eighth Circuit holds that "[a] valid waiver requires 'intentional relinquishment of a known right.'"[6] *Crutcher v. MultiPlan, Inc.*, 22 F.4th 756, 766 (8th Cir. 2022) (quoting *Carroll's Warehouse Paint Stores, Inc. v. Rainbow Paint & Coatings, Inc.*, 824 S.W.2d 147, 151 (Mo. Ct. App. 1992)). By contrast, the Eighth Circuit's test for waiver of a right to arbitrate, as stated in *Morgan*, considers whether a party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right[.]"[7] *Morgan*, 142 S. Ct. at 1714.

Perhaps there is not much daylight between those two tests; in the Eighth Circuit, it may be the case that the outcome would generally be the same, regardless of which test was applied. But in the Second Circuit—which has not yet interpreted *Morgan*—there is a more significant (and, in some cases, possibly dispositive) difference between the two tests.

---

[6] As described in the footnote above, the Eight Circuit applies state law to its waiver claims.

[7] Adding to the uncertainty, the Supreme Court "assume[d] without deciding" that federal courts were right to resolve cases involving purported waivers of the right to arbitration as "matter[s] of federal law." *Id.* at 1712. That language might suggest that Courts are meant to apply federal "waiver" law in disputes regarding waivers of the right to arbitrate. But there is no federal common law on the subject of waiver. Federal common law applies in only "'few and restricted' enclaves:" (1) where "a federal rule of decision is necessary to protect uniquely federal interests;" or (2) where "Congress has given the courts the power to develop substantive law. *City of New York v. Chevron Corp.*, 993 F.3d 81, 89 (2d Cir. 2021) (internal quotation marks and citations omitted). Indeed, federal courts considering waiver apply state law. Thus, it is unclear how a court would apply "ordinary procedural rule[s]—whether of waiver or forfeiture or what-have-you" but also apply federal law.

Specifically, the Second Circuit's test for waiver of the right to arbitrate, when stripped of its prejudice requirement, would require Courts to consider "(1) the time elapsed from when litigation was commenced until the request for arbitration; and (2) the amount of litigation to date, including motion practice and discovery." *La. Stadium*, 626 F.3d at 159. But the general test for waiver states that "[a] contractual right may be waived if it is 'knowingly, voluntarily and intentionally abandoned.'" *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 95 (2d Cir. 2015) (quoting *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104 (2006)). Accordingly, while the general test for waiver of a contractual right considers intent to waive, the test for waiver of the right to arbitrate considers only the length of time elapsed and the amount of litigation to date.

At some point, courts may be forced to interpret whether *Morgan* instructs courts to adopt general waiver analysis, or instead instructs courts to strip any prejudice requirement from their existing analysis of waivers of the right to arbitration under the FAA. However, although the former seems most consistent with *Morgan's* reasoning, the Court need not do so today. In this case, it does not matter whether the Court merely strips the prejudice analysis from the Second Circuit's test for waiver of a right to arbitrate, or whether the Court adopts traditional waiver analysis: the result is the same. Under either test, Defendants have not waived their right to arbitrate.

        **1. Under Contractual Waiver Analysis, Defendants Did Not Waive Their Right to Arbitrate**

First, Defendants have not waived their right to arbitrate under a traditional waiver analysis. Waiver requires "a clear manifestation of an intent . . . to relinquish [a] known right." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 585 (2d Cir. 2006) (internal quotation marks and citation omitted). "Waiver may be established by affirmative conduct or by a failure to act that evinces the intent to abandon the right." *Coggins v. Cnty. of Nassau*, 615 F. Supp. 2d 11, 30

(E.D.N.Y. 2009). "But 'waiver should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection.'" *Luitpold Pharms.*, 784 F.3d at 95 (quoting *Fundamental Portfolio Advisors*, 7 N.Y.3d at 104). "'[M]ere silence, oversight or thoughtlessness in failing to object' is insufficient to support an inference of waiver." *Id.* (quoting *Courtney–Clarke v. Rizzoli Int'l Publ'ns, Inc.*, 676 N.Y.S.2d 529, 529 (1st Dep't 1998)). "While such a waiver may be express or implied, the intent to waive must be clearly established and cannot 'be inferred from doubtful or equivocal acts or language, and the burden of proof is on the person claiming the waiver of the right.'" *Lockheed Martin Transportation Sec. Sols. v. MTA Cap. Constr. Co.*, No. 09 CIV. 4077 (PGG), 2014 WL 12560686, at *22 (S.D.N.Y. Sept. 16, 2014) (quoting *200 E. 87th St. Assocs. v. MTS, Inc.*, 793 F. Supp. 1237, 1251 (S.D.N.Y. 1992)) (internal quotation marks omitted).

Here, Plaintiffs have not satisfied their burden to show that Defendants intended to relinquish their known right to arbitrate. Defendants did not expressly waive the right to arbitrate— Plaintiffs do not identify any instances where Defendants evinced an intention not to arbitrate. Nor do Plaintiffs point to any evidence to suggest that Defendants impliedly waived their rights to arbitrate.

At most, Plaintiffs argue that Defendants should have brought their motion to compel arbitration sooner. But that argument has no merit. First, it appears that there was some question as to whether it was known whether Defendants did, in fact, have the right to arbitrate their claims, given that the Arbitration Agreements could not be located until December 2021 due to the closure of Defendants' restaurants during the COVID-19 pandemic. *See* Pedrignani Aff. ¶ 17. And more broadly, "[w]aiver is ultimately a matter of *intent*[.]" *Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, No. 12 CIV. 2827 NRB, 2013 WL 1191895, at *7 (S.D.N.Y. Mar. 22, 2013) (emphasis in the original). Defendants' failure to move to compel arbitration sooner is insufficient

to demonstrate that they intended to waive their right to arbitrate, particularly given their inability to access the Agreements.  *See Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 80 F. Supp. 3d 535, 540 (S.D.N.Y. 2015) (the failure of a party to bring copyright actions was not waived by the parties' failure to pursue litigation "for many years while [the plaintiff's] recordings were played over the air" because "that is precisely the sort of inaction that does not constitute a waiver").

### 2. Defendants Did Not Waive the Right to Arbitrate Under the Second Circuit's Previous Test for Waivers of the Right to Arbitrate, Absent its Prejudice Requirement

Neither did Defendant's waive their right to arbitrate when the Court considers the remaining elements under the Second Circuit's test for waivers of the right to arbitrate under the FAA.  Those elements are "(1) the time elapsed from when litigation was commenced until the request for arbitration; and (2) the amount of litigation to date, including motion practice and discovery."  *La. Stadium*, 626 F.3d at 159.

The first element—the time elapsed from when litigation was commenced until the request for arbitration—weighs slightly in favor of a finding of waiver.  This case was filed on December 31, 2020, and Defendants did not file a letter requesting permission to file a motion to compel arbitration until January 14, 2022.  Dkt. Nos. 1, 68.  Certainly, a delay of more than a year before Defendants requested arbitration is a considerable amount of time.

However, the amount of litigation that has occurred in this case weighs strongly against a finding of waiver.  In assessing this element, courts consider "any motion practice engaged in by the parties and the extent of discovery the parties have exchanged."  *Pierre v. Rochdale Vill. Inc.*, No. 18CV6383MKBST, 2020 WL 6799635, at *7 (E.D.N.Y. Nov. 19, 2020) (collecting cases); *see also Safe Step Walk-In Tub Co. v. CKH Indus., Inc.*, No. 7:15-CV-07543-NSR, 2019 WL 13181378, at *3 (S.D.N.Y. June 25, 2019) ("The amount of litigation includes motion practice and discovery.");

*S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 84 (2d Cir. 1998) (commenting that the amount of litigation includes consideration of "exchanges of pleadings and discovery").

Here, there has not been significant motion practice—indeed, the motion practice in this case has dealt primarily with procedural, non-substantive issues. In May 2021, Plaintiffs filed and briefed a motion to serve, via alternative service, a now-dismissed defendant, Igor Segota, but that motion was not opposed. Dkt. Nos. 25–29. Plaintiffs later responded to the Court's order to show cause regarding the service of Mr. Segota, to which Mr. Segota—but not the other Defendants—responded. Dkt. No. 35, 36. The parties have also briefed a motion for conditional class certification. *See* Dkt. Nos. 52–54, 61–64, 67. While these motions are not to be overlooked, they are not substantive—the parties have not yet undertaken to brief the merits of their dispute, and have not filed any dispositive motions. Thus, the lack of substantive motion practice in this case weighs against a finding of waiver. *Pierre*, 2020 WL 6799635, at *7 (determining, where "neither party ha[d] briefed the sufficiency of Plaintiff's allegations or the merits of his underlying . . . claim," that "[t]he lack of substantive motion practice . . . weigh[ed] against a finding of waiver.").

Nor has substantial discovery occurred to this point. A discovery schedule was not set by the magistrate judge until October 22, 2021. Dkt. No. 48. There is no dispute that, in the ensuing months, the parties had served discovery requests, but had not responded to those requests or produced any documents as of the date they submitted their briefs in this dispute. *See* Mem. at 12, Opp'n at 11. The virtual lack of any meaningful discovery in this case weighs strongly against a finding of waiver. *See Pierre*, 2020 WL 6799635, at *7 (determining that this element weighed against wavier where "[n]o depositions were taken before Defendant raised the issue of arbitration; rather, discovery had been provided 'only in anticipation of [a] mediation and a settlement conference,' . . . and it had involved only minimal exchange of documents and responses to interrogatories"); *Katel*

*LLC v. AT&T Corp.*, No. 02 CIV. 2440 (RJH), 2004 WL 1192072, at *1 (S.D.N.Y. May 28, 2004) (noting the fact that there had been "no depositions or settlement conferences" as factors in finding that the second factor did not weigh in favor of waiver).

Thus, while the length of time elapsed between the filing of this case and Defendants' request to arbitrate weighs somewhat in favor of a finding of waiver, the parties have not engaged in any meaningful amounts of litigation to date. Because the amount of litigation weighs significantly against a finding of waiver, the Court concludes that Defendants have not waived their right to arbitrate under the Second Circuit's analysis for waivers of the right to arbitrate.

### IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to compel arbitration. The case is stayed, pending the outcome of the arbitration proceedings. The parties are ordered to submit a joint status update no later than the earlier of (a) February 30, 2023, or (b) seven days after the culmination of those proceedings.

The Clerk of Court is directed to terminate the motion at Dkt. No. 76.

SO ORDERED.

Dated: July 18, 2022  
New York, New York

GREGORY H. WOODS  
United States District Judge